MARTIN *vs.* CHAPMAN.

1. A violation of contract, by one of the parties to a written agreement, is sufficient to authorize the other party, to abandon it, and sue for the injury sustained.

2. It is the province of the court to expound to the jury, all written instruments which may be offered in evidence, on the trial of a case; and ambiguous words are to be expounded by popular meaning, and the light shed on them from other parts of the written agreement.

3. The words "crop time," when used in a written agreement, between a planter and his overseer, mean that portion of the year, which is occupied in making and gathering the crop.—— The balance of the year is not considered crop time.

---

[*] 10 Peters' R. 343.

Error to the Circuit court of Perry county.

*Action on the case.* At the spring term of the court aforesaid, eighteen hundred and thirty-five, Joseph Chapman, the plaintiff, declared against Shadrach Martin, the defendant, that on a certain day, in said county, articles of agreement were made and entered into, between plaintiff on the one part, and defendant on the other, by which plaintiff agreed on his part, to attend to defendant's business in the capacity of an overseer, to work, when necessary, at light work, such as plaintiff might prefer, and also after the crop was laid by, to attend to the hands in whatever business defendant might wish them to do; to gather the crop, and haul the cotton to a gin, and to the landing, should not other arrangements be made with it; and defendant, on his part, agreed to furnish eleven hands, who should be under the control of plaintiff in crop time, and to pay the plaintiff the eighth part of the corn, fodder and cotton, and also agreed to feed said plaintiff's horse, which the plaintiff agreed to plough, until the new crop was made; and plaintiff averred that the services to be rendered by him as an overseer for the defendant, as above stated, were to be rendered and performed, in the year eighteen hundred and thirty-four, on the farm of said defendant, and that the eighth part of the corn, fodder and cotton, to be raised on the farm, in said year, was to be paid to plaintiff, at the end of the year, when the crop was gathered; and plaintiff averred that the agreement to plough said horse was, that the plaintiff should plough said horse during the ploughing season of the year eighteen hundred and thirty-four, and that the agreement of the defendant to feed said horse until the new crop was made, was meant and intended, that defendant should feed plaintiff's horse, until the said new crop was made in the same year; and the agreement being so made as aforesaid, in consideration thereof, plaintiff promised defendant to perform and fulfil the same

2

in all things, and the defendant undertook, and then and there faithfully promised plaintiff to perform and fulfil the same in all things, on said defendant's part, and although plaintiff did perform said agreement, and did, during the said year, attend to the business of defendant as an overseer, and did work at light work, and after the crop was laid by, did attend to the hands in whatever business defendant wished, and did also plough his horse, and did proceed to gather a great part of the crop, to-wit, about eighteen hundred bushels of corn, one hundred and sixty thousand pounds of fodder, and forty thousand pounds of seed cotton, and was ready and willing to complete the whole of the work and service by him to be done and performed, by virtue of said agreement, of all of which defendant had due notice; yet the plaintiff said, defendant did not, nor would perform and fulfil said agreement on his part, nor his said promises, though often requested so to do, but wholly neglected and refused so to do, and did not nor would permit or suffer plaintiff to proceed to gather said crop, and perform his said agreement, but hindered and prevented him from so doing, and then and there wrongfully discharged the plaintiff from further performance and completion of his agreement and promise, whereby the plaintiff was deprived of the profits and advantages which he otherwise might and would have derived from the performance and completion of said agreement, to-wit, one eighth part of the corn, fodder and cotton raised on said farm, in the year eighteen hundred and thirty-four, and plaintiff averred that the said one eighth part of the corn, fodder and cotton raised on the farm, amounted to a large quantity, to-wit, to two hundred and fifty bushels of corn, twenty thousand pounds of fodder, and five thousand five hundred pounds of seed cotton, and plaintiff further averred that the same was of the value of four hundred and fifty dollars.

There were five additional counts in the declaration, all setting out, in various forms, the plaintiff's cause of action.

To this declaration the defendant plead, non assumpsit, payment, arbitration and award, accord and satisfaction, and a set-off.

And at the fall term of eighteen hundred and thirty-six, came the parties and joined issue, and a jury of good and lawful men came, and being sworn, on their oaths said, they found for the plaintiff, and assessed his damages at four hundred and eighty-seven dollars and eighty cents: It was therefore considered by the court, that plaintiff recover from defendant the said sum, together with his cost, &c.

Whereupon the defendant came and moved the court to set aside the verdict, and grant a new trial on the grounds:—

1st. That the jury, before they were discharged by the court, and after the cause had been submitted to them, separated and left the jury room, and the court house, without being under the care of any bailiff or officer of court, and again assembled and came into court with what purported to be their verdict.

2d. The jury, after the cause had been stated to them, and after the argument of counsel had been heard, and the charge of the court given, and they had returned to the jury room, came into the court room when the court was not in session, and delivered what purported to be their verdict, to a person whom they supposed to be the deputy clerk, and then separated and went at large, and afterwards assembled, and took what purported to be their verdict back again. All of which was without the consent of the court, or the defendant.

3d. The finding of the jury was contrary to law and evidence.

4th. The court, in the charge that was given to the jury, mistook the law in relation to the construction

which was placed upon the contract, which was offered in evidence by the plaintiff.

Upon this motion, the court being of opinion as contended for by defendant, that the jury, in estimating the damages, had included the value of the corn mentioned in the declaration, and that the same should not have been so done under the evidence as offered at the trial—directed a new trial on the motion of defendant, unless the plaintiff should remit all the damages assessed by the jury, over the sum of three hundred dollars; which assessment was considered to cover the value of the corn; whereupon, the plaintiff in open court consented to remit all his damages, over and above the sum of three hundred dollars, and costs of suit: It was therefore adjudged by the court, that the judgment should stand, and be good for three hundred dollars, and cost of suit, and no more, except legal interest thereon, for which execution might issue, &c.

The bill of exceptions stated, that on the trial of the case, the plaintiff gave in evidence to the jury, a contract in writing, of which the following was a copy:

"Alabama, Perry county.—Articles of agreement, entered into between Joseph Chapman on one part, and Shadrach Martin, on the other, both of the state and county aforesaid, witnesseth—that the said Joseph agrees to attend to the said Martin's business, in the capacity of an overseer, to attend as strict to business as need require; also to work when necessary, at light work, such as he may prefer, and also after the crop is laid by, to attend without labor, to them, the hands, in whatever business said Martin may wish them to do, and also to gather the crop, and haul the cotton to a gin or to the landing, should not other arrangements be made with it. The said Martin agrees on his part, to furnish eleven hands, to-wit, John, Reuben, Sally, Frank, Peter, Sam, Littleton, John, a boy, Marinda,

William;—these hands are to be under the control of said Joseph in crop-time.    The said Martin agrees to pay the said Joseph, the eighth part of corn, fodder, and cotton, and also to feed said Joseph's horse, which Joseph will plough until the new crop is made. Signed in good faith, this 31st March, 1834.—(Signed,) Joseph Chapman, Shadrach Martin.—Attest, W. Chapman."

   " The plaintiff, after said contract was read to the jury, introduced a witness who swore, that about the last of October, eighteen hundred and thirty-four, and after said plaintiff had commenced picking out said crop of cotton raised, some misunderstanding took place between the plaintiff and defendant, in relation to the government and control of the hands, mentioned in said contract.    That the plaintiff insisted they should pick out cotton, and the defendant insisted that a part of them should saw some lumber for the building of a gin-house, and that some of the others should get stocks to be sawed, and accordingly ordered and directed them to go to doing the work he desired them to do.    That the plaintiff then objected to any portion of the hands being employed as the defendant desired them, and asserted that he had a right to control them, and that if they were not employed as he wanted them, he would not remain.    In the altercation between the parties, the defendant told the plaintiff that he wanted him to remain, and attend to his business, according to the contract between them, but that he, the said defendant, must build a gin-house, to which the plaintiff replied, that he would not consent to remain on such terms, and that shortly afterwards the plaintiff left the employment and business of the said defendant, and did not return.

   " No evidence was offered of the meaning of the words, crop-time, as used in the contract between the parties, or what was understood by the expression " crop time," among planters and farmers in the coun-

try.   Whereupon, the court charged the jury, that the contract between the parties being in writing, it was exclusively the duty and privilege of the court, to construe it, and that according to the construction which the court placed upon the contract, the term "crop time," used in the contract, meant the gathering, as well as making of the crop, and that during all the time the plaintiff was engaged, making and gathering and saving a crop for the defendant, he had the exclusive right of governing and controlling the hands mentioned in the contract, and that if the defendant attempted to interfere or prevent him, or employed them in doing other work, during said time, without or against the plaintiff's consent, it constituted a sufficient reason in law, for the plaintiff's leaving the business and employment of the defendant, and a sufficient and lawful excuse for his not remaining to the end and expiration of the term for which he contracted, and thereby not performing and fulfilling the contract on his part; and further, that the only time during the year embraced by said contract, at which the defendant had a right to order, direct and control said hands, independent of the said plaintiff, was the time that intervened or elapsed between the laying of the crop by, and the commencement of the gathering or saving it.   To which said several opinions so delivered by the court, the defendant excepted, and prayed that the bill of exceptions might be signed, and made part of the record," &c.

And at the present term, the plaintiff in error assigned for error, that the court below erred in the charge given to the jury, and excepted to by the plaintiff in error.

*Erwin*, for the plaintiff in error.
*Hopkins & Parsons*, contra.

ORMOND, J.—The bill of exceptions, contains an in-

strument in writing, which, on the trial in the court below, the court was called on to expound. To the exposition thus given by the court, the defendant below, who is the plaintiff in this court, excepted, and assigns that matter here, as error.

It is the province of the court, to expound to the jury, all written instruments which may be offered in evidence. And in the exposition given to this paper, referred to in the bill of exceptions, we are of opinion, the court did not err.

The words "crop-time," used in the said instrument, are to be expounded by popular meaning; and by any light which may be shed upon them, by any other part of the written agreement. The phrase evidently means, that portion of the year which is occupied in making and gathering the crop—the period of time, which would intervene between the time, when the crop no longer required working : in popular phrase, when "the crop is laid by," and the time when the crop had matured, and it was necessary to commence gathering it, is that portion of the year which is not considered crop time. This view, if necessary, is aided by the instrument itself.

The defendant undertakes to work at light labor, such as he may prefer, during *crop-time*, and after the crop is *laid by*, to attend the hands without labor, in any business the defendant may employ them in. The distinction between *crop-time*, and that portion of the year when the crop is *laid by*, and not included in the term "crop-time," is thus referred to and recognized.

The plaintiff, as appears from the evidence, having taken the hands from the defendant, while he was gathering the crop, and by consequence, during crop time, without his consent, and against his remonstance, was guilty of a violation of the contract, on his part, which authorized the defendant to abandon the contract, and sue for the injury he had sustained ; and the charge of the court to this effect is right.

There is no error in the charge of the court, and the judgment must be affirmed.