Greene *vs.* Linton, et al.

### GREENE VS LINTON, et al.

1. Where covenants are mutual and dependent, plaintiff must aver performance before he can be entitled to recover : and so, also,

2. Where a contract is *absolute*, that the plaintiff is to serve twelve months, and the service of the whole time is a *condition* to be performed before he can be entitled to compensation, he cannot recover on the contract, unless he aver and prove performance on his part ; and the sickness of plaintiff a part of the time, is no sufficient apology for an imperfect performance.

3. The true intent and meaning of a contract, is best arrived at by ascertaining the intention of the contracting parties, and the true construction is that which will best serve to carry that intention into effect.

[4. The rule in England, *it appears*, is, that where a contract is *executory*, and there is a failure by a plaintiff as to part performance, he cannot be defeated of his remedy on the contract, for so much of it as he has fairly complied with.]

5. Where an action is brought by a party on mutual covenants, and there has been a partial performance only by plaintiff, and the defence does not go to the whole consideration, the defendant may reduce the damages, by shewing what he has sustained by the failure of the plaintiff, and is not compelled to resort to a cross-action: but

6. Where plaintiff covenanted to serve defendant, twelve months, as master in a smith's shop, and was to receive one fourth of the nett proceeds of the shop, during that time, for his salary, —and his declaration stated that he was prevented by sickness from discharging his duty under the contract, for the space of four months, and claimed the one fourth of the nett proceeds which accrued during the eight months,—the declaration, on demurrer, was held defective.

Error to the Circuit court of Pickens county.

This was an action of covenant, prosecuted by the plaintiff in error. He declared against defendants, for that theretofore, by certain articles of agreement, commonly called a covenant, made and entered into between the defendants, as party of the first part, and the plaintiff, as party of the second part, under the seals of the parties, defendants, among other things, covenanted with the plaintiff, that they, the defendants, being desirous of carrying on the blacksmith's business, in the town of Pickensville, in the State of Alabama, would give to the plaintiff, one fourth part of the nett proceeds of the business of them the defendants, arising in and from their business as blacksmiths, in the town of Pickensville, for and during the term of twelve months, commencing on the day of the date of said agreement; and that they would furnish three good hands to work under plaintiff; and should they, the defendants, at any time consider it to their advantage, to employ more hands than the three, they should have full power to employ as many hands in and about said business of smithing, as they might deem expedient, giving to plaintiff an equitable proportion of the nett proceeds of the business, reference being had to the compensation which plaintiff would be entitled to if three hands only had been employed; and defendants further covenanted to and with the plaintiff, to furnish a shop, and all tools necessary to carry on said business of smithing, and also to use due diligence to obtain such iron and steel as might be necessary for carrying on the aforesaid business.

And the plaintiff, in consideration of the bargain and

Greene *vs*. Linton, et al.

agreement of the defendants, by their covenant, to and with the plaintiff, covenanted to and with the defendants, by his covenant, to carry on the smithing business for defendants, with diligence, industry, and care, striving, at all times, to further the business and promote the interest as much as possible, of them the defendants, disclaiming any right at any time, to intermeddle or interfere in any manner whatsoever, with any arrangement whatever that the defendants might at any time make, for furnishing such necessaries as might be wanted in carrying on the business; such as procuring steel, iron, coals, wood and tools, and also to furnish his own meat and drink, washing and lodging; and further, to render to such person as defendants might require, each night, after any day that business might be done in the shop, a true and correct account of all work, or what kind or sort soever,—which it was the duty of plaintiff to take account of, and also to pay over to such person, all moneys that might at any time be received by him, and also an account of all the work done on credit in the shop.

And plaintiff averred, that on the day of the date of the covenant, he entered upon the business, and took charge of three hands, as required by the stipulations of the covenant, and for eight months, superintended the hands and shop with diligence and care, and labored to promote the interest of defendants, and performed fully his part of the covenant—after which time, he was afflicted with sickness, and was unable to perform labor for four months: The plaintiff further averred, that during the aforesaid term of eight months, the nett pro-

ceeds of the business amounted to the sum of one thousand dollars, which said sum, by reason of the premises, and of their covenant aforesaid, defendants became liable to pay to plaintiff, &c.

To the declaration, the defendants demurred; which being sustained by the court below, the plaintiff took a writ of error.

*Peck & Clark,* for plaintiff in error.

GOLDTHWAITE, J.—The plaintiff instituted this action of covenant in the Circuit court of Pickens county, and from his declaration, we are to ascertain the terms of the covenant between the parties.

The defendants being desirous of carrying on the blacksmith's business in Pickensville, covenanted with the plaintiff, to give him one fourth part of the nett proceeds arising from the business for the term of twelve months, commencing from the date of the covenant. The plaintiff, *in consideration of the bargain and agreement* of the defendants, covenanted to carry on the said business for them, with due diligence, industry and care, striving, at all times, to further the business, and promote their interest as much as possible.

These stipulations, with others, which are not material to be stated, are set forth in the declaration; which avers, that a number of slaves were placed under the direction of the plaintiff, who entered on the business of blacksmithing, and superintended and carried on the same for the defendants during the space of eight months; at the expiration of which period, he was ta-

Greene *vs.* Linton, et al.

ken sick, and was unable to perform any service or labor for the next four months. It is also averred, that during the eight months, one fourth part of the nett proceeds of the business, amounted to one thousand dollars, which the plaintiff claims, by reason of the covenant, and his performance, for that period of all which was required of him by his stipulations: and the declaration concludes with the averment, that the defendants have broken their covenant, by not paying him the said sum of money.

Waiving, for the present, the consideration of the form of the declaration, it seems obvious, that the plaintiff has, on the facts presented, a strong claim to receive from the defendants, one fourth part of whatever sum was made from the business during the time he superintended it, and his misfortune ought not to deprive him of this claim; yet no little difficulty is experienced in ascertaining the true rule of law, applicable to cases of this description.

The covenants, as they are stated by the declaration, are mutual, and would seem to be dependent on each other; and if this rule is to obtain, the plaintiff must necessarily aver performance on his part, before he can be entitled to a recovery. This view is taken by the pleader in framing his declaration; but instead of averring performance of the services during the whole twelve months, he states as an excuse, that he was disabled by sickness during four of the months; and thus the question arises, as to the sufficiency of the declaration.

If, by the contract of the parties, the plaintiff has stipulated, *absolutely*, that he will serve the defendants for

7 P.                18

twelve months, and the service for the whole time, is a *condition* to be performed, before he can be entitled to any compensation, there is an end of the case; because, by his own statement, he admits, that during a portion of the time, he did not render the services contemplated by the agreement.

The elder decisions on the subject of dependent and independent covenants, are not to be reconciled with each other, and it would be useless to look to them for the rules by which we are to arrive at the proper construction which is to be given to the contract now before us. Modern cases, without attempting to lay down or prescribe fixed and arbitrary rules, admit that the construction is best arrived at by ascertaining the intention of the parties, and giving such construction as will best serve to carry it into effect—Kingston vs Preston, (2 Doug. 689;) Glazebrook vs Woodrow, (8 Term. 371;) Perry vs Hewlet, (5 Porter, 318.)

This being the rule, let us endeavor to ascertain from the covenants themselves, what was intended to be understood by the parties. It is evident that the contract was to continue for twelve months, (and during that time, neither would have the right, without the consent of the other, to dissolve it,) because the nett proceeds, during that period, were to determine the amount of compensation to be received by the plaintiff. So, it it is also evident, that the personal services of the plaintiff were to be rendered during the same period, for the purpose of increasing the sum to be divided at its expiration; otherwise, no reason can be assigned why he was employed at all. And it is clear, that neither party con-

Greene *vs.* Linton, et al.

templated the sickness or death of the plaintiff; otherwise, it is fair to presume that such events would have been provided against.

Now, it is apparent that manifest injustice would be done to the plaintiff, by inserting an implied consideration in this contract, that he should continue in health during each day of the whole year, and to make his compensation depend on the performance of this condition. So, it would be equally unjust to the defendants, to compel them to pay the plaintiff for the whole year, when he may have been incapacitated, by disease, during eleven months of it.

As neither party ought to be injured, by that which was never contemplated by them when they entered into the covenant, some rule must be ascertained, which will render equal justice to all concerned.

If the contract is to be considered as rescinded, and that the plaintiff is entitled to a reasonable remuneration for his services, each party might have reason to complain. The defendants might allege, that they had only contracted to pay one-fourth of the *profits*, and none might have been made. The plaintiff might insist, that the profits, during the time he had rendered the services, were much more than his compensation, as a laborer, would amount to. The rescision of the contract, would not, therefore, indicate the true rule.

If the plaintiff should insist (as he does by his declaration,) that he is entitled to receive his proportion of the profits made during the time he rendered the services, the defendants might well reply, that the business for the other part of the year had been unprofitable, and in-

volved them in debt—when it was but equitable, that the profits of the first eight months should discharge the losses of the last four: or they might insist that their reasonable profits to have been expected, were much lessened by the illness of the plaintiff, and that they were entitled to receive from the former fund, a remuneration for the profits which would have accrued to them.

A principle of decision has obtained in cases where there are mutual covenants, and a part performance has been made, which, if applied here, will, we think, afford the means of arriving at a rule agreeable alike to equity and law.

The case of Boone vs Eyre, (1 Hen. Black. 273,) was a case of mutual covenants. The plaintiff conveyed to the defendant, the equity of redemption of a West India plantation, together with a stock of negroes on it, in consideration of five hundred pounds, and an annuity of one hundred and sixty pounds for his life; and covenanted that he had a good title to the plantation, was lawfully possessed of the negroes, and that the defendant should quietly enjoy; and the defendant covenanted that the plaintiff, well and truly performing all and every thing therein contained, on his part to be performed, he, the defendant, would pay the annuity. The breach assigned, was the non-payment of the annuity—plea, that the plaintiff was not at the time of making the deed, legally possessed of the slaves or the plantation, and so had not a good title to convey,—to which there was a general demurrer. Lord Mansfield held, that as the covenants in relation to the slaves went only to a part of the

Greene *vs.* Linton, et al.

consideration, and as the breach of covenant would be paid for in damages, the plea was not good; and if it were allowed, any negro not being the property of the plaintiff, would bar the action.

So, in the case now before us, if the performance of the services by the plaintiff is a *condition*, the failure for one day would be as fatal as a failure for months.

In Campbell vs Jones, (6 Term R. 570,) Mr. Justice Ashurst, after adverting to the case of Boone vs Eyre, says there is a difference between *executed* and *executory* covenants: and that there, the covenants were executed in part, and the defendant ought not to keep the estate, because the plaintiff had not a title to a few negroes.

Apply this remark to this case. Here is a covenant which is to be executed on each one of three hundred and sixty-five days,—there is a failure as to some of the days, but a performance on the others. Ought the plaintiff to be defeated of his remedy? We think not.

The rule which we have adverted to, is now well established and settled in all the English courts—Carpenter vs Cresswell, (4 Bing. 409;) 8 Taunt. 583; 2 J. B. Moore, 639: and its intrinsic merit must cause its adoption every where.

But in these cases, it does not seem to have occurred to the courts, that there was no necessity of throwing the defendant on his cross-action, on the covenants to him, which would often be productive of evil consequences, as in the case of an insolvent, or doubtfully solvent, plaintiff.

In the action of covenant, *damages*, and not a *sum in numero*, are recoverable, and although a sum certain may

Greene *vs.* Linton, et al.

often afford the *proper* measure of damages, yet it by no means follows, that it is the *only* measure. If, then, where an action is brought by one party, when the covenants are mutual, and have been performed in part only by the plaintiff, and the defence does not go to the whole consideration, it will be a much safer rule to permit the defendant to reduce the damages, by shewing those which he has sustained by the failure of the plaintiff. This course would harmonize with other decisions of this court, permitting a partial failure of consideration to be given in evidence in an action on the original contract; and as in *many*, and perhaps *most* of the cases of mutual covenants, those of one party form the consideration for the covenants entered into by the other, justice would be much promoted by allowing the reduction of the damages claimed, instead of compelling the defendant to resort to his cross-action, whenever there is shewn a partial performance of the covenants.

We are aware that we have gone further into the consideration of this subject, than is perhaps warranted by the case before us, but as many of these questions have been adverted to in argument, and as an exposition of the rule seemed to be called for, in order that our present decision may be understood, we have gone at length into the principle which we think governs such cases.

To apply the principles we have thus ascertained, to the decision of the case before us—It will be seen that the declaration is defective, as it assumes, as a consequence, of the inability of the plaintiff to render the services contemplated by the contract, for the last four months of the year, that the mode of ascertaining his

Greene *vs.* Linton, et al.

compensation was changed. The contract of the parties is, that one fourth part of the nett proceeds for the year is to be paid. The plaintiff assumes that he is entitled, under the circumstances, to one fourth of the nett proceeds for eight months.

In this view alone, the declaration is defective, as the matters which are set out, do not impair the essential features of the contract; but as this error in the declaration is sufficient to sustain the judgment of the Circuit court, it must be affirmed.