(77 South. 433)

McGOWIN LUMBER & EXPORT CO. v. CAMP LUMBER CO. (1 Div. 224.)

(Court of Appeals of Alabama. Nov. 22, 1917. Rehearing Denied Jan. 15, 1918.)

1. SALES ⊙⟹90—MERGER OF CORRESPONDENCE AND NEGOTIATIONS IN WRITTEN CONTRACT.

All of the correspondence and negotiations preceding and relating to a purchase and sale of lumber became merged in the writing signed by one party and executed by the other, except as modified by mutual consent.

2. CONTRACTS ⊙⟹176(1) — CONSTRUCTION BY COURT.

Where the terms of a contract are certain, it becomes a question for the court to construe.

3. SALES ⊙⟹81(1) — CONDITIONS—TIME FOR PERFORMANCE.

Where a contract for the sale of lumber stipulated 60 days for delivery, but the buyer requested that the seller advise in about 2 weeks if it would get the order out within the time named, stating it might grant a longer time, provided it had notice in ample time for chartering a vessel, and again requested that the seller notify it when the order would be ready, such statements or requests were not conditions in the contract of sale, but must be considered to reach its true meaning, when executed, as to the contract time of delivery, the duties of the parties, and the right of the buyer to be notified, etc.

4. CONTRACTS ⊙⟹170(1) — CONSTRUCTION BY PARTIES.

The dealings of the parties subsequent to a written contract between them are important as going to show the construction put on the contract by the parties themselves while friendly; it being presumed they knew best what was meant by its terms.

5. CONTRACTS ⊙⟹169 — CONSTRUCTION—INTENTION OF PARTIES.

The courts, in construing contracts, are entitled to have all the facts and circumstances going to show the conditions under which the parties contracted and what influenced them, to the end that the contract may be construed to give it such effect as the parties intended.

6. SALES ⊙⟹81(3)—CONTRACT BETWEEN MERCHANTS—TIME AS OF ESSENCE.

Time is of the essence of an unconditional contract to sell and deliver merchandise to a

merchant by a merchant at a stipulated price and at a fixed time and place.

7. EVIDENCE ☞10(2)—JUDICIAL NOTICE—LOCATION OF CITIES.

The Court of Appeals judicially knows the location of Mobile, Ala., and of Carrabelle, Fla.

8. EVIDENCE ☞5(2) — JUDICIAL NOTICE — MATTERS OF COMMON KNOWLEDGE.

The Court of Appeals judicially knows by common knowledge that the handling of 350,000 feet of lumber is expensive, and that the chartering of a vessel to transport so much lumber is also expensive.

9. SALES ☞151—SALE OF LUMBER—PERFORMANCE BY SELLER.

Where a lumber mill contracted unconditionally to sell and deliver 350,000 feet of lumber on board ship to a lumber exporter at a stipulated price, and at a fixed time and place, it was necessary for the seller to be ready, able, and willing to make delivery according to the terms of the contract before the buyer could be in default, unless the latter waived the time of delivery, or by its own failure placed the seller where it could not comply.

10. CONTRACTS ☞318 — RIGHT TO DEMAND PERFORMANCE.

As a general rule, where one party is unable to perform his part of a contract, he is not entitled to demand performance by the other.

11. SALES ☞81(7) — DELIVERY ON VESSEL — DUTY OF BUYER.

The law does not require a lumber exporter, which has purchased a large quantity of lumber from a mill for delivery on board its vessel chartered for that purpose, to go to the expense of chartering and placing a vessel when the mill is not ready to perform within the time fixed by the contract, in order to avoid liability for breach of contract, as the law does not require the doing of a useless thing.

12. SALES ☞153—TIME FOR DELIVERY—NOTICE BY SELLER.

Where a lumber exporter contracted for 350,-000 feet of lumber, to be loaded on its vessel chartered for the purpose, within 60 days, the seller knowing that the time required for furnishing a vessel was from 15 to 30 days, it was the seller's duty to have notified the buyer of the estimated time at which it would be ready to deliver within the time fixed to enable the buyer to furnish and place the vessel.

13. SALES ☞177—DUTY OF BUYER—PLACING VESSEL FOR DELIVERY.

The buyer of lumber was under no duty to place its vessel for lading at the mill until the seller had notified it of the approximate time within the contract period of 60 days for delivery in which delivery might be expected.

14. SALES ☞174 — FAILURE TO DESIGNATE TIME OF DELIVERY—BUYER'S BREACH.

It being the duty of the seller of lumber to designate the time of delivery on board the buyer's vessel within the time specified in the contract, having failed to do so, the seller cannot excuse its breach as on account of the failure of the buyer to be prepared to receive delivery.

15. SALES ☞153—OPTION AS TO TIME OF DELIVERY—NOTICE TO BUYER—ABANDONMENT OF CONTRACT.

Where the seller has an option of delivery on any day within a specified time, the duty is on it to notify the buyer of the time when he must be in a position to receive, and, on failure to give such notice, the buyer may treat the contract as abandoned.

16. SALES ☞181(11)—TIME FOR DELIVERY—WAIVER—SUFFICIENCY OF EVIDENCE.

In an action by lumber mill against exporter of lumber for breach of contract to purchase 350,000 feet, evidence *held* insufficient to show waiver by the buyer of the 60-day limit for delivery.

Appeal from Circuit Court, Mobile County; Samuel B. Browne, Judge.

Action by the Camp Lumber Company against the McGowin Lumber & Export Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Action in assumpsit by the plaintiff, appellee here, against the defendant, appellant here, for a breach of contract. From a judgment in favor of the plaintiff, defendant appeals. The facts gathered from the bill of exceptions are substantially as follows:

After some preliminary correspondence, the plaintiff wired defendant on February 28th as follows:

"Will furnish schedule Aloft for $15.50 f. a. s. vessel Carrabelle delivery two months telegraph quickly other orders pending."

On the same date, the plaintiff wrote the defendant a letter confirming the telegram, making certain suggestions as to sizes, which suggestions are immaterial here, and adding as a postscript the following:

"We failed to state that the delivery on this order was to be sixty days, but if we can furnish sooner will advise you beforehand."

The order was dated March 1, 1910, and was for approximately 350,000 feet of long leaf yellow pine lumber in certain designated sizes, at the price of $15.50 per thousand, "to be shipped sixty days, terms cash less 2 per cent. ten days," these prices being f. a. s. vessel Carrabelle. The order, for convenience, was designated "Aloft." On March 1st the defendant wrote a letter to the plaintiff acknowledging receipt of the wire regarding schedule "Aloft," and inclosing the schedule for that lumber. On March 2d the defendant wrote a letter to the plaintiff acknowledging receipt of a letter of the 28th, confirming the wire as to schedule "Aloft," and notifying the plaintiff as to certain conditions to be placed upon the order, and also there was in the letter the following paragraph:

"In regard to the time of delivery, would state that we put on the order sixty days, and would like for you to advise us in about two weeks' time whether you will get the cargo out within that time; this for the purpose of chartering. We of course could give you fifteen days longer if necessary, but must know in time, so that we can effect a charter."

On March 7th the plaintiff wrote a letter to defendant, acknowledging receipt of letter inclosing formal order, and making request for some slight modification as to sizes, but without making any allusion to the notice of time of shipment as contained in the letter from defendant to plaintiff under date of March 2d. On March 7th the defendant wrote a letter to plaintiff in reply to a letter from plaintiff, in which this expression is used:

"Replying to your favor of the 4th inst., in regard to schedule 'Aloft,' which you are cutting for us."

---

Then followed a statement regarding a modification of the schedule. Following this there was this in the letter:

"In regard to chartering, we wish you would, say about the 20th or 25th of this month, let us know what you then estimate will be. the right time for a vessel to report. Sailing vessels are getting very hard to charter, and we would like as much notice as possible, but in this instance, we do not want vessel to report until you are well satisfied that you will have order complete."

On March 10th the plaintiff wrote defendant acknowledging receipt of the letter of the 7th, but this letter did not say anything about the notice for the vessel which had on two former occasions been requested by the defendant. This was all the correspondence relating to the making of the contract, and indeed, there seems to have been no communication between the parties until April 26, 1910, when the defendants wrote to plaintiff acknowledging receipt of a wire asking defendant to wire acceptance for $2,000 at three months on order "Aloft," and declining to do so. Then follows a statement in the letter, giving defendant's reasons, and setting up the fact that the dealings had been unsatisfactory between the parties as to some other shipments, which have nothing to do with this case. On April 28th the plaintiff wrote a letter to the defendant regarding the failure of defendant to accommodate them with an acceptance, in which letter occurs the following:

"In this connection, wish to say that we have lost, we admit, considerable time at our Carrabelle mill within the last four months, on account of trouble in logging operations. However, we hope to have this remedied within the next week or ten days, after which time we will be in a position to give your order 'Aloft' special attention. We cannot consent to your canceling this order, in view of the fact that we accepted it in good faith, and feel that we can get the order prepared in ample time for you to sell in Cuba at a profit to yourselves. We are fully aware of the fact that this order is not worth any more than you are paying for it now under the present conditions, taking into consideration the advance in tonnage," etc.

This letter was written 2 days before the expiration of the 60 days, the time limit named in the original order. On May 2d the defendant wrote a letter to plaintiff declining to accept the lumber or to consider the contract as then in force. On May 4th the plaintiff wrote a letter to defendant stating that the price of the order "Aloft" was f. a. s. vessel Carrabelle, and that if defendant would get vessel, plaintiff would have order prepared in time for same. On May 6th defendant wrote a letter to plaintiff still declining to consider the contract in force and insisting that the order was not ready for delivery within the time specified, and that they had a right to disregard it. On May 11th plaintiff wrote defendant acknowledging receipt of a letter of the 6th insisting upon a delivery of the lumber in accordance with the contract, and stating further:

"We are, however, in better condition now to manufacture lumber at Carrabelle than ever before, and are preparing daily on your order 'Aloft' an average of twelve thousand feet per day, and you will see by this that within thirty days', time, the order will be completed, and this will therefore be your authority to charter a vessel just as quickly as possible for this order, as we need the skid room just as soon as it is possible for us to secure same."

In this letter, plaintiff admitted that they themselves had been disappointed with reference to some other orders, at their Carrabelle mill, but this does not affect this case. There was other correspondence between the parties, the one insisting upon delivery and the other declining to further consider the contract, but as we see it, they do not affect a decision of this case, as they were all written after the parties had come to the parting of the ways, and were doubtless preparing for this litigation.

It was shown that the defendant was a lumber merchant at Mobile, Ala., that the plaintiff was a dealer in lumber and lumber manufacturer having a mill located at Carrabelle, Fla., and another mill located at some other point. There was evidence tending to show that the time which it took a vessel to arrive at Carrabelle after being chartered from Mobile was about 30 days. The person who was the general manager of the plaintiff at the time of this contract and between that time and the date of default testified that on the 4th day of April, the manager of the defendant had requested plaintiff to delay the cutting of the lumber, and that plaintiff's manager had replied declining to grant any further time. It was also testified to by the manager of the plaintiff that at the time covered by the contract, the plaintiff had a mill at Carrabelle with a capacity of 75,000 feet per day, and a mill at White Springs, Fla., with a capacity of 150,000 feet per day, and that in addition to that, plaintiff bought and sold considerable lumber. The evidence also tended to show that there was a material decline in the price of lumber between the time of the acceptance of the order and the 60-day time limit. The evidence also tended to show that about the 26th of April, there was about 40,000 feet of the kind of lumber necessary to fill the order "Aloft" on the yard of the plaintiff, and that he reported that condition to the defendant. Mobile, Ala., is a seaport on the Mobile Bay, and Carrabelle is a seaport on Pensacola Bay. So far as is necessary for the proper consideration of the questions involved in this case, the foregoing is all of the testimony.

Stevens, McCorvey & McLeod, of Mobile, for appellant. Harry T. Smith & Caffey, of Mobile, for appellee.

SAMFORD, J. The proper disposition of this case turns upon the construction of the contract entered into between the parties, under date of March 1st, as evidenced by

the various writings, and construed in the light of the facts and circumstances surrounding the parties at the time of the execution of the contract.

[1, 2] It is elementary law that all of the correspondence and negotiations preceding and relating to the purchase and sale became merged into the writing signed by the one and accepted by the other, except as the same may have been modified by the mutual consent of the parties. Where the terms of a contract are certain, it becomes a question for the court to construe. McFadden v. Henderson, 128 Ala. 229, 29 South. 640; Barnhill v. Howard, 104 Ala. 412, 16 South. 1; Foley v. Filrath, 98 Ala. 176, 13 South. 485, 39 Am. St. Rep. 39.

[3-5] It will be observed that in the letter written by the defendant, dated March 2d, there was a request that plaintiff advise defendant in about 2 weeks if plaintiff would get the order out within the time named in the contract, and stating that the information was desired for the purpose of chartering, and in the letter of March 7th, the defendant again requested that plaintiff notify it about the 20th to the 25th as to when the order would be ready for delivery. In the letter of February 28th from the plaintiff to the defendant, it was stated "that the delivery on this order was to be sixty days, but if we can furnish sooner, will advise you beforehand." It will also be noted that in the first letter, requesting notice as to the time of delivery, defendant stated that it might grant a longer time, but, if so, it must have notice in ample time for chartering. To the requests of the defendant the plaintiff made no reply. It is true that these statements are not conditions in the contract, and under the authorities must not be treated as such. McFadden v. Henderson, supra. Still they must be considered and weighed for the purpose of arriving at the true meaning of the contract at the time it was executed, and as to what the parties themselves understood to be the contract time of delivery, and as fixing the duties of the parties under the contract, and the right of the defendant to be notified as recognized in plaintiff's letter of March 10th in reply to the request for notice. These requests, while not being a part of the original contract, are important as going to show what construction was put upon the contract by the parties themselves during a time when they were friendly; it being presumed that the parties to the contract know best what is meant by its terms (6 R. C. L. on Contracts, § 241), and the courts, in construing contracts, are entitled to have all the facts and circumstances going to show the condition under which the parties contracted, and what influenced them, to the end that the contract may be so construed as to give to it such effect, and none other, as the parties intended at the time it was made (6 R. C. L. on Contracts, § 239).

[6] In this case, we have an unconditional contract to sell and deliver merchandise to a merchant by a merchant at a stipulated price and at a fixed time and place. Time, therefore, is of the essence of the contract. McFadden v. Henderson, supra; Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. 12, 29 L. Ed. 366; 6 R. C. L. on Contracts, § 285.

[7-9] The court knows the location of Mobile, Ala., and of Carrabelle, Fla., and by common knowledge, that the handling of 350,000 feet of lumber is expensive, and that the chartering of a vessel to transport that much lumber is also expensive. Therefore we conclude from all the facts in this case that it was necessary for the plaintiff to have been ready, able, and willing to make delivery according to the terms of the contract before the defendant could be in default, unless the defendant had waived the time of delivery, or by its own failure placed the plaintiff where it could not comply. 6 R. C. L. on Contracts, § 312; Holt v. U. S. Security Life Ins. Co., 76 N. J. Law, 585, 72 Atl. 301, 21 L. R. A. (N. S.) 691.

[10] As a general rule, it is settled that where one party is unable to perform his part of the contract, he is not entitled to demand the performance of the contract by the other party. 6 R. C. L. on Contracts, § 325; Johnston v. Mitchell, 1 A. K. Marsh. (Ky.) 225, 10 Am. Dec. 727.

[11] When all the facts in this case are considered, we conclude that the time of delivery of the lumber was to be within 60 days, that defendant was to furnish and place the vessel, that plaintiff knew that defendant would have to charter a vessel for this purpose, that before defendant could be put in default for a failure to receive, plaintiff would have to notify defendant of its readiness to deliver within the 60 days, as provided by the contract. This notice the plaintiff did not give, but on the contrary, wrote a letter on April 28th, 2 days before the expiration of the contract, then admitting its unpreparedness to comply, and stating that in 10 days it would be ready to give the order special attention. On May 2d defendant gave notice of its refusal to be further bound, and after that time, plaintiff wrote a letter to the defendant in which it admitted that it would be some 30 days from that time before it could be prepared to make delivery. It will therefore be seen that if defendant had gone to the expense and trouble incident to the chartering and placing of a vessel, it would have been useless, and the law does not require the doing of a useless thing. 35 Cyc. 167; 6 R. C. L. on Contracts, § 328.

It may be that under the facts defendant has not placed itself in a position to have maintained an action for a breach, but none the less, the plaintiff has not shown that within the 60 days it had in good faith discharged its duty to the defendant, and was ready, willing, and able to make delivery under the terms of and in the manner re-

quired by the contract. It is true that on May 4th plaintiff wrote a letter saying that if defendant would furnish a vessel, plaintiff would have the lumber prepared by that time, but that was after the 60 days, and even then plaintiff admitted it was not and had not been in a position to make delivery. The other evidence for plaintiff, to the effect that plaintiff had another mill, and that there were other mills from which plaintiff could have purchased lumber, with which to fill this order, was clearly not within the contemplation of the parties at the time of the making of the contract. The entire correspondence and the dealings between the parties indicate that it was the intention of the parties that the lumber contracted for would be manufactured by the plaintiff at its Carrabelle mill, as rapidly as it could be gotten out, and that it was never contemplated that the lumber should be shipped from other points or should be bought from other parties, and it was not shown that plaintiff made any effort to procure this lumber, except from the Carrabelle mill.

[12] It is quite clear that the seller was to deliver within 60 days, and that the buyer was to furnish the vessel at such time within the 60 days as would have enabled the seller to make delivery, but it also appears that the time required for furnishing a vessel was from 15 to 30 days, that the plaintiff knew this, and that it would have entailed a useless expense upon the defendant to have provided a vessel before the plaintiff was ready to deliver. Therefore we hold that under the facts and circumstances surrounding the parties at the time of contract, it was the duty of the plaintiff to have notified the defendant of the estimated time at which it would be ready to deliver within the 60 days so as to enable defendant to furnish and have placed the vessel, according to the contract. The foregoing is in entire accord with the views of Mr. Justice Mayfield, as expressed in the opinion in this case on appeal to the Supreme Court. McGowin Lumber & Export Co. v. Camp Lumber Co., 192 Ala. 41, 68 South. 263.

[13] The defendant was under no duty to place the vessel until plaintiff had notified it of the approximate time within the 60 days in which delivery might be expected, and hence as laid down in 2 Parsons on Contracts (9th Ed.) 769, and the case of Berry v. Nall, 54 Ala. 446, is not in conflict with the views herein expressed. Indeed, in the case of Berry v. Nall, supra, the opinion says:

"The seller in a contract of sale, whose duty it is to get the article sold ready for delivery, and *who, therefore, may designate the time when the buyer shall accept and pay for them,*" etc. (italics ours)

—recognizes the correctness of the decision in this case that it was the duty of the plaintiff to notify defendant as to when the vessel should be placed. The case of Krebs v. Livesley, 51 Or. 527, 92 Pac. 1084, does not apply, for in this case there is no effort shown on the part of the defendant to rescind before the time for performance began, while in that case there was.

In the case of Lundie v. Cosper, 20 Ala. 123, plaintiff declared on a contract which he himself had breached, and the court held, very properly, that he could not recover, and in the end of the opinion in that case the court said:

"If the contract was, as the judge assumes and as the evidence conduced to prove, that Cosper was to start for it on Sunday, and he refused to start until Tuesday, he was the first to violate the contract, and this justified Lundie in abandoning it on his part. See Greene v. Linton, 7 Port. 133 [31 Am. Dec. 707]; Martin v. Chapman, 6 Port. 344; Davis v. Wade, 4 Ala. 208; Pharr & Beck v. Batchelor, 3 Ala. 237."

[14, 15] In the instant case, under the rule as declared in the case of Berry v. Nall, supra, it being the duty of the plaintiff to designate the time of delivery within the time specified in the contract, the plaintiff cannot excuse its breach on account of the failure of the defendant to be prepared to receive. Where as in this case, a seller has the option of delivery on any day within a specified time the duty is on the seller to notify the buyer of the time when the buyer must be in a position to receive, and on failure to give such notice, the buyer may treat the contract as abandoned.

[16] We cannot agree with the contention of appellee that the evidence shows a waiver on the part of the defendant of the 60-day limit for delivery. On the contrary, we are of the opinion that the letters emphasize the importance of the time limit, and while defendant did say that it would extend the time 15 days, such extension was only to be granted upon request and notice which was never applied for or given, and in the testimony for plaintiff by its then manager, it appears that defendant suggested a delay which the plaintiff did not agree to.

We therefore conclude as follows:

First. The contract is one for delivery within 60 days, and, being a specified term limit, expires at that time.

Second. The seller having the option of delivery at any time within the 60 days, the duty was on him to notify the buyer of the time of delivery, when the buyer must be in a position to receive, and on a failure to give such notice within the time, the buyer may treat the contract as abandoned.

Third. In order for the plaintiff to be in a position to recover, it must have performed its duty under the contract, and have been ready, willing, and able to make delivery under the contract at the time designated by it within the 60 days.

It is unnecessary to notice all of the rulings of the court on the former trial, but for the rulings in conflict with the foregoing

opinion, the judgment of the lower court is reversed, and the cause is remanded.

Reversed and remanded.