153 So. 290

## MEADOW RIVER LUMBER CO. v. BLACK.

### 3 Div. 735.

Court of Appeals of Alabama.
Sept. 12, 1933.

Rehearing Denied Nov. 28, 1933.

Ball & Ball, of Montgomery, for appellant.

Rushton, Crenshaw & Rushton, of Montgomery, for appellee.

SAMFORD, Judge.

The action is based upon a contract for the sale of one carload of hickory lumber, and the facts may be said to be as follows: Plaintiff is a corporation manufacturing hardwood lumber at Rainelle, W. Va. In this transaction the initial negotiation was through its agent C. A. Dotson. Defendant is a lumber broker, residing in Montgomery, Ala., and in this transaction was represented by its agent Heidelbach, who lived in Huntington,

W. Va. The defendant placed with plaintiff an order for lumber, evidenced by two letters in terms as follows:

"825 1st St.
"Huntington, W. Va.
"April 13, 1929.
"Meadow River Lumber Co.
"Rainelle, W. Va.
"Mr. C. A. Dotson, Rep.
"City.,

"Please enter our order as per your and my conversation 4/6 and 2/23—'29.

"12 to 13 M' 4/4 X 3" and wider average 8" Mill.

"Run well seasoned Rgh Hickory.

"FOB Danville, Virginia—$50.00.

"Practically free of heart as per your conversation.

"Grade and count guaranteed.

"We are to pay on your regular terms. You can ship this car at once.

"Sincerely yours,
"(Consign to)
"C. E. Black Lumber Company
"Montgomery, Ala.
"(Signed) Per B. A. Heidelbach."

"April 15, 1929.
"Meadow River Lumber Co.
"Rainelle, W .Va.        Our order #1810.
"Gentlemen:
"Please ship to: C. E. Black Lumber Co.
"At: Danville, Virginia.
            Southern Railway Delivery.

"12 to 13 M' 4/4 x 3" & wider,
    average 8" Mill Run well
    seasoned Rough Hickory,
and practically free of Heart $50.00 per M'
"F. O. B. Cars Danville, Va.

"Terms, Cash Lee 2% and your regular terms to govern, you to guarantee grade and count.

"Same to be shipped at once.

"This confirms order placed April 13th by our Mr. B. A. Heidelbach, of Huntington, W. Va., with your Mr. C. A. Dotson.

"Kindly acknowledge receipt of order promptly.

"C. E. Black Lumber Co.
"By C. E. Black.

"CEB/b
"copy to:
"Mr. B. A. Heidelbach,
"P. O. Box #1553,
"Huntington, W. Va."

This order was acknowledged by plaintiff as follows:

"Acknowledgment

"The Meadow River Lumber Company
"Rainelle, W. Va. April 19, 1929.
"Our No. 12234   Sold to C. E. Black Lumber Company
"Your No. 1810   Address Montgomery, Alabama.
"Ship to & From Same—Danville, Va.
"Via Southern Railway Delivery.

"In correspondence pertaining to this order please quote our order number.

"Terms: Freight, Cash: Balance Cash 10 days from date of arrival of stock less 2 per cent. 30 Days net.

"Order as Entered              Price
"12 to 13,000 Ft. 4/4 x 3" & Wider
Average 8" Mill Run Hickory—
Rough—                    $50.00 M'

"The above is as we have entered your order. If not correct please advise us at once.

"We thank you for the order.
"Yours very truly,
"The Meadow River Lumber Co."

This was but a single order, and in view of the following statement contained in letter of April 13th, supra, to wit: "Please enter our order as per your and my conversation 4/6 and 2/23—'29," must be considered in connection with those conversations as testified to by Dotson as follows:

"The order was given for 12 to 13,000 feet of 4/4 3" average 8" mill run seasoned rough hickory practically free of heart to be shipped to C. E. Black at Danville, Virginia, but I was not told that it was for resale to Southern Products Company. When Mr. Heidelbach first came to me about this order he inquired about white hickory. I told him we could not supply white hickory and the only thing we had was the regular grade of mill run hickory which would contain what the logs would produce covering that grade. Mr. Heidelbach's answer was that he would see his customer and see what could be done. Later he came back and gave me the order for the car 4/4 mill run hickory and nothing was said with reference to white wood."

"When Heidelbach gave me the order or shortly before then I had specifically told him that we could not furnish white hickory and that it would be the regular mill run meaning about eighty per cent mature or red wood and about twenty per cent sap wood." This testimony is not disputed.

There seems to be no well-defined general custom among lumbermen governing the

terms of the above contract. There is a term in the rules of National Hardwood Lumber Association, of which organization most of the hardwood lumbermen are members, which defines "heart center" as the small soft core or pith to be found in all hickory logs. But it is evident from the contract itself and from the surrounding circumstances that the expression, "practically free of heart" had no reference to this "heart center." Lumber manufactured from hickory logs such as are evidenced by the cross-section of hickory logs submitted to us for inspection would, of necessity be practically free of heart center and a stipulation in a contract such as appears here would be a useless precaution.

■■ Nor are we impressed with the contention of appellant that the suit must rest upon a sale based upon the acknowledgment of defendant's order, supra, and not upon the original order, supra. It is true that an acceptance of an offer to buy or sell is effective to bring about a meeting of the minds of the buyer and seller to a contract of sale when, and only when, it is identical with the terms of the offer. Cochran Lumber Company v. Paterson, etc., Lumber Company, 202 Ala. 366, 80 So. 448; Derrick v. Monette, 73 Ala. 75. But, where the order for the articles is made in writing the order must be accepted or rejected according to its terms, and when plaintiff undertook to fill the order for the lumber, without a modification being agreed to, such act was an acceptance of the order as written. Sturdivant v. Mt. Dixie S., L. & Inv. Co. et al., 197 Ala. 280, 72 So. 502.

The acceptance by the plaintiff of defendant's written order constituted the contract between the parties and all previous conversations and negotiations were merged into the writing. McGowin Lumber & Export Company v. Camp Lumber Company, 16 Ala. App. 283, 77 So. 433. However, the testimony of the witness Dotson as to his conversation with defendant's agent prior to the placing of the written order may be looked to by the court in explanation of the circumstances surrounding the parties at the time of the execution of the contract, but not for the purpose of changing the terms as written. Ben Cheeseman Realty Co. v. Thompson, 216 Ala. 9, 112 So. 151.

■■ In construing a contract the whole instrument should be looked to and considered, along with the circumstances attending its execution, if it appears to be ambiguous. Echols v. Snider, 19 Ala. App. 35, 94 So. 189. And such construction must be given as to effectuate the intent of the parties. 5 Alabama & Southern Digest, p. 570, Key No. 147. There can be no doubt from the evidence in this record that the defendant intended to buy hickory lumber, of the specified dimensions, practically free from that which from age and the nature of the tree was dark. Did the plaintiff by the acceptance of the written order intend to sell just that?

■■ We have no authority on the subject further than our common knowledge of hickory trees and their growth in the eastern part of the United States. The timber or lumber cut from these trees has become an important article of the commerce of the country and must have been the subject of litigation many times; but counsel in the case have cited us to no authority, and after patient and extensive search, we have been unable to find any decisions of court, dealing with the question. So, it becomes the duty of this court from the facts in this case and from its own common knowledge of the subject-matter to announce a rule, which we now do. A hickory sawlog for commercial purposes is constituted as follows: The bark, the sap, the heart, and the heart center. The "bark" is the outer covering of the tree and protects the tree in its growth. The "sap" is the new wood, is ivory or white in color, and is between the bark and the heart; through this flows the life of the tree. The "heart" is the dark wood inside of the sap. In the center of this heart wood is the "heart center," which is a small pithy wood being at the center of the tree and is of no value as an article of commerce.

■ It is conceded that plaintiff did not deliver the lumber ordered in accordance with the foregoing definition. Was that the kind and character of lumber contracted for? This was a question for the jury and was properly left to them.

Finding as they did that the lumber tendered was not such as was contemplated by the contract, and the defendant having paid the freight on the lumber, he was entitled to recover the amount so paid and the expense of unloading as claimed in his plea.

There is no error of which the plaintiff can complain, and the judgment is affirmed.

Affirmed.