140 So. 402

MOSS et al. v. GULF STATES STEEL CORPORATION.

6 Div. 649.

Supreme Court of Alabama.

Jan. 14, 1932.

Rehearing Denied March 31, 1932.

John S. Stone, M. Leigh Harrison, John S. Stone, Jr., and Altman & Koenig, all of Birmingham, for appellants.

O. R. Hood, of Gadsden, and Horace .C. Wilkinson, of Birmingham, for appellee.

BOULDIN, J.

The action is to recover damages for the breach of an executory contract of sale. The seller sues the buyer for refusal to accept deliveries.

The trial court sustained demurrers to the several counts of the complaint as amended. Because of such adverse rulings plaintiffs took a nonsuit, and prosecute this appeal to review the rulings on the demurrers.

Count 2, as amended by amendment No. 1, reads:

"Plaintiffs, C. L. Moss and G. B. McCormack, partners under the firm name and style of Moss & McCormack, claim of the defendant Gulf States Steel Company, the further sum of One Hundred Twenty Five Thousand Dollars ($125,000.00) damages for the breach of a covenant or agreement entered into by the defendant with the plaintiffs on, towit, the 28th day of July, 1920, in substance as follows:

" 'Coal and Coke Contract
" 'Issued from the office of
" 'D. H. Brown & Company,
" 'Sales Agents,
" 'Coal, Coke and Pig Iron,

" 'Brown-Marx Building,
" 'Birmingham, Ala., July 28, 1920.
" 'Messrs. Gulf States Steel Co., Birmingham, Ala.
" 'Bought of Messrs. Moss & McCormack, Birmingham, Ala., through
" 'D. H. Brown & Company, Sales Agents.
" 'Quantity, Approximately 30,000 Tons
" 'Grade, Warrior Black Creek Washed Coal thru 3-½" Screens.
" 'Price, $6.00 per net ton f. o. b. mines, Nyota and Carbon, Ala.

" 'Terms, Net Cash on the 20th day of each month for all coal shipped during the previous month.
" 'Route, L&N Railroad

" 'Shipment, To Gulf States Steel Co., Alabama City, Ala. at rate of approximately 3000 tons per month, when assigned cars are furnished. It is agreed and understood that the ACL cars will be promptly returned to the L&N Railroad empty and without being used by the Gulf States Steel Co. in interplant switching service.

" 'Expiration, This contract expires, May 1, 1921.

" 'Weights, R. R. Track scale weights at the mines to govern all settlements.

" 'This contract is one of a number of contracts made by the seller and is made subject to strikes, accidents, car supply or other causes beyond control.

" 'The buyer and seller in entering into this contract realize the uncertainties of absolute deliveries, growing out of strikes, casualties, or other causes beyond the control of either party; and it is hereby mutually acknowledged that the intent of this agreement is not to bind either party as to the failure to perform or modify performances by reason of matters beyond the control of the party in default, but that the material shall be shipped by the seller and accepted by the buyer as per delivery specified, so far as labor, the physical conditions at the respective plants, and the ability of carriers will permit. It is mutually understood and agreed, however, that in the event of only partial fulfillment of this contract through restriction of output from causes beyond control of seller, then, the buyer shall accept without recourse such amount of coal as seller may be able to supply under a pro rata division of available coal with other obligations.

" 'In consideration of the price named in this contract, it is understood and agreed that the purchaser shall use no less than xxxxxx each month during the life of this contract.

" 'This contract is completely set forth herein and shall be subject to cancellation in case of violation of its terms or conditions.'

"And the plaintiffs say that although they have complied with all its provisions on their part, the defendant has failed to comply with the following provisions thereof, viz.: it has failed to buy any of the said coal from the plaintiffs that was to be shipped during the months of January, February, March, April and May, 1921, and plaintiffs further aver that the market price of said coal during each of said months was greatly less than $6.00 per ton, and was, towit, $2.00 per ton during each of said months, and that as a proximate consequence of the failure of the defendant

to buy said coal during said months, the plaintiffs were damaged in the sum of $125,000.00.

"The plaintiffs aver that during each of the said months of January, February, March and April of the year 1921, they were willing, ready and able to furnish and deliver to the defendant three thousand tons of said coal per month in accordance with the provisions of said agreement or covenant; that the defendant failed and refused to accept and pay for any of said coal; and that railroad cars suitable for use in transporting said coal as provided by said agreement or covenant were at all times available during the said months."

The validity of the contract is attacked for want of mutuality of obligation.

The obligation to make shipment "when assigned cars are furnished" seems to supply the chief basis of this contention. The argument is that the buyer is charged with no duty to furnish cars, and that it is purely optional with the seller whether he will cause such cars to be furnished.

The contract imports an obligation on the part of one to buy and the other to sell and deliver f. o. b. cars on a named railroad for shipment to a designated point. The clause, "when assigned cars are furnished," in its setting, does not negative, but merely limits, the seller's obligation. It is clearly implied that cars are to be furnished by the carrier when the shipper, in performance of his obligation to deliver, orders cars in the customary way. Perfection Mattress & Spring Co. v. Dupree, 216 Ala. 303, 113 So. 74; Reynolds v. Massey, 219 Ala. 265, 122 So. 29; Williston on Contracts, p. 2341, § 1293.

But the duties of the parties are not left to implication from the very nature of the transaction. By later provisions of the contract it is expressly made the obligation of the seller to deliver, and the buyer to accept, in so far as not prevented by conditions beyond the control of the parties as therein defined, among such conditions being the "ability of the carriers." Stipulations excusing performance on the part of either for causes beyond his control are prudent safeguards against contingencies attending the business during the period of performance, and in no sense destroy mutuality, nor negative the obligations actually undertaken as defined by the contract. 13 C. J. 337, § 187.

Conceding for the present that the contract contemplated moving the coal only in "assigned cars," a term presumably known to and understood by the parties, amended count 2 avers that suitable cars for transportation as provided in the agreement were available. Such averment was sufficient to disclose the duty of the shipper to make deliveries in so far as such restriction as to cars went.

Count 2 avers plaintiffs had complied with all the provisions of the contract on their part, were ready, able, and willing to make the deliveries complained of, and that defendant failed and refused to accept and pay for any of said coal.

The count having set out the contract showing the obligations of the shipper, an averment that he had complied therewith was sufficient. There was no need to restate these obligations in detail and how he had complied with them. This was a matter of evidence.

Averments showing a contract extending by its terms to May 1, 1921, that the seller had fully performed to the time of the alleged breach by defendant, and then stood ready, able, and willing to complete performance, met all the requirements of good pleading.

Ability to perform included availability of cars. Count 2, however, expressly avers cars were available as per contract.

Refusal of defendant to accept further deliveries under the conditions recited was a sufficient averment of the breach. Whether the refusal was upon the actual offer of a shipment need not appear. If the buyer gave notice, he would accept no further deliveries, this would excuse any further offer to deliver. Refusal to accept may be proved in either manner.

Count 2, as amended by amendment No. 1, was entirely sufficient in its averments of the conditions upon which the plaintiffs' right of action depends and in its averment of breach on the part of defendant. Long v. Addix, 184 Ala. 236, 63 So. 982; Sloss-Sheffield Steel & Iron Co. v. Payne, 192 Ala. 69, 68 So. 359; Terrell v. Nelson, 177 Ala. 596, 58 So. 989.

In count 4, plaintiffs seek to define the meaning of "assigned cars" as known and understood between the parties. This count further alleges the custom and usage obtaining in prior dealings between the parties on similar orders, and observed in performing this contract up to the time of the breach; alleges that this known custom entered into and became a part of the contract.

Trade terms and expressions peculiar to the business and not of common knowledge are subject to definition in their relation to the case in hand in pleadings and in proof. In Assigned Car Cases, 274 U. S. 564, 568, 47 S. Ct. 727, 71 L. Ed. 1204, there is a definition of "assigned cars," evidently disclosed from the record before the court. Whether the definition in the instant case be precisely the same is immaterial. The special meaning at this time and place in the dealings between these parties is the vital concern.

The alleged custom of business is directed to an explanation of the clause requiring deliveries made "when assigned cars are furnished."

As heretofore noted, this is followed by a much fuller provision excusing performance for causes beyond the control of the shipper, but expressly declaring a duty to make shipment so far as such conditions, among them "the ability of the carriers," will permit.

If, unexplained, the first-quoted clause would imply no duty to ship in other than "assigned cars," such meaning would be rendered at least ambiguous by the contract as a whole, especially the last-quoted clause. It was, therefore, allowable to aver the custom to use any available cars, the observance of such known custom in former dealings between these parties, and in the performance of this contract prior to the breach, coupled with averments that the contract was made with reference thereto, and same became a part of the contract. Douglas & Mizell v. Ham Turpentine Co., 210 Ala. 180, 97 So. 650; Montgomery Enterprises v. Empire Theater Co., 204 Ala. 566, 86 So. 880, 19 A. L. R. 987; East Tenn., Va. & Ga. Ry. Co. v. Johnston, 75 Ala. 596, 51 Am. Rep. 489.

Count 4 was not subject to demurrer.

What has been written will suffice as to other counts, made numerous in an effort, as we take it, to meet the views of the trial court.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.