156 So.2d 338

**FLAGG–UTICA CORPORATION**

v.

**CITY OF FLORENCE.**

**8 Div. 74.**

Supreme Court of Alabama.

May 9, 1963.

Rehearing Denied Sept. 26, 1963.

' Mitchell, Poellnitz & Cox, Florence, for appellant.

Dumas, O'Neal & Hayes, Birmingham, and Arnold Teks, Florence, for appellee.

PER CURIAM.

Defendant below appeals here to review a general judgment rendered against it in

the circuit court of Lauderdale County in the sum of $5,789.11 by the trial judge without the aid of a jury.

The suit has its genesis in a written contract whereby the appellee, which for convenience we will at times call the City, agreed to sell and the appellant, which we will often refer to as Flagg, agreed to buy natural gas at rates set forth in the contract.

The contract, admittedly signed by both parties on May 16, 1955, and made effective July 1 of the same year, contains three pivotal paragraphs that are important factors in the determination of this case. We will later copy and advert to these provisions.

It appears from the evidence that the contract was draw by a firm of attorneys who at the time were retained in a professional capacity by both signatories and their services in drafting the contract were mutually acceptable. Both contracting parties submitted to these attorneys such information as they thought necessary to be incorporated in the contract.

Neither side can successfully assert that the contract was solely the product of the other, to the end that one party alone can be charged with responsibility of authorship so as to fasten on it applicable provisions of law.

Section 3 of the contract reads as follows:

"3. TERM OF THE CONTRACT.

"This contract shall be effective as of the date of initial delivery as provided in paragraph 2 above (July 1, 1954), and shall continue in effect one (1) year; provided however that all obligations of the parties hereto with regard to the rendition of service and payment therefor and to the computation of payment periods hereinafter referred to shall commence from the date of initial delivery as defined in Section 2 hereof. Said contract shall continued from month to month after the term provided above unless either party shall give the other 90 days notice in writing prior to any anniversary of the date of termination of the contract, of its intention to terminate said contract."

Section 6(a) (b) is as follows:

"6. The Corporation shall purchase and pay for gas furnished by Municipality according to the following schedule of rates:

\*    \*    \*    \*    \*    \*

"(a) Under this Industrial Rate, Interruptible Gas, Schedule I-1, the Corporation agrees to permit their gas service to be curtailed to zero at any time at the discretion of the Municipality, within a period of time not to exceed two (2) hours after said Corporation has been notified that it is necessary that their gas service be curtailed to zero.

"(b) This schedule of rates is based on the present Natural Gas Tariff of the Alabama-Tennessee Natural Gas Company, the supplier of the Municipality, and approved by the Federal Power Commission, Washington, D. C., and any change in such Tariff will be reflected in this contract in the same amount by which the City's Commodity Charge is increased or decreased. These rates do not and will not include a demand charge."

The complaint contains three counts, to each of which defendant directed a demurrer with multiple grounds. When the court overruled the demurrers the defendant filed special pleas that attempted to assert the Statute of Frauds of Alabama as a defense. Demurrers of plaintiff to these special pleas were sustained. The trial was had on three pleas:

(1) Want of consideration for the agreement sued on.

(2) Failure of consideration for the agreement sued on.

(3) General issue.

It appears briefly from all three counts of the complaint that the City and Flagg entered into a contract (copy of which is attached haec verba to the complaint as an exhibit) providing for the sale by the City to Flagg from its natural gas distribution system for the distribution and sale of natural gas within the corporate limits of Florence and adjacent area. The service to be provided was on an interruptible basis, thus insuring cheaper rates than on a firm or non-interruptible plan. Flagg had two in-industrial plants or locations to be served. One was its main plant on Lee Highway and the other a satellite plant situated on Sweetwater Avenue.

It is further alleged that from time to time, during and after the first effective year of the contract, City notified Flagg that pursuant to paragraph 6(a), supra, that it was necessary for Flagg's gas service at both plants to be curtailed to zero, and that Flagg, pursuant to said notices, from time to time did shut off the gas or closed the valves on its premises so as to reduce the gas service to zero. It was further averred that neither had elected to terminate the contract in accordance with its provisions after notice. The City contends in its suit the contract continued in full force and effect pending the alleged failure to curtail the gas.

Count three of the complaint contains paragraph 3 as follows:

"The course of conduct by plaintiff in giving curtailment notices and by defendant in complying with such notices by closing the valves located in its two aforesaid plants and so shutting off the flow of gas from plaintiff's distribution system to plaintiff's two said plants constituted an agreement or understanding or interpretation by the parties to the Gas Contract that this was the method of curtailment provided by paragraph 6(a) of the Gas Contract and obligated defendant to comply with curtailment notices received from plaintiff by curtailing the flow of gas by closing the valves in its two aforesaid plants."

The City further contends by allegations in its complaint that on January 4, 1959, it gave defendant notice that gas service would have to be curtailed to zero for a period of not more than two hours, to-wit, not later than 3:30 P.M. on January 4, at both of defendant's plants. The complaint further avers that notwithstanding said notice defendant violated its obligation to the plaintiff and without any notice to plaintiff failed to close its valves controlling the flow of gas from plaintiff's distribution system to defendant's main plant or otherwise to curtail the said flow of gas and continued to use the same until 8:00 A.M. on January 5, 1959, consuming during said time 173,900 cubic feet of gas at its said main plant.

The City avers that as a proximate consequence of defendant's improper failure to close the valves or otherwise curtail the flow of gas during said period of time, plaintiff was required, by the terms of said tariff, to pay and did pay an excess demand charge for gas which plaintiff did not need or use for a period of twelve months following January 5, 1959, pursuant to tariff imposition. It is alleged that said tariff imposes on plaintiff a demand charge based upon the maximum quantity of gas taken on any one day by plaintiff from its supplier and that this demand charge continues for one year after such gas is taken.

The trial court heard evidence at length as to the contractual responsibilities of the parties in shutting off the gas so as to reduce consumption to zero. The contention of appellant below, and here, is that the words, "the Corporation agrees to permit their gas service to be curtailed to zero at any time at the discretion of the Municipality" clearly and unambiguously imposed on the City the duty and responsibility to do the curtailing by shutting the valves. The City contends that the words are ambiguous and uncertain.

■ The trial judge did not write an opinion when it rendered judgment in favor of the City against Flagg, but from his rulings on the evidence over the objections of defendant, we are of the opinion that he considered the words were indefinite and ambiguous in their placement of responsibility and duty to curtail the flow of gas. We concur in the trial judge's conclusion and state that evidence was admissible to show that Flagg assumed that responsibility.

■ Before we proceed further with this opinion, we think it is appropriate at this time to say that the contract, in our opinion, is continuing in its effect until notice is given by either party thereto of a desire to terminate.

As we have already pointed out, the contract recites the effective date as of the date of initial delivery, which under section 2, was fixed at July 1, 1954, and shall continue in effect for one year. Then next following, the agreement provides that it shall continue from month to month after the term provided (one year) unless either party shall give the other 90 days' notice in writing prior to any anniversary of the date of termination of the contract, of its intention to terminate the contract.

■ This contract continuing in full force and effect without any action to renew on the part of either party, and expressing considerations (the furnishing of gas service under named conditions and payment therefor), and also being in writing, we cannot see where its legal efficacy is in any wise jeopardized or affected by our Statute of Frauds, or its validity impaired by want or failure of consideration as appellant contends by appropriate pleading.

■■ The provision in the contract that it continue from one year from July 1, 1954, the date of initial delivery fixed by the agreement, was inserted in our opinion to establish an anniversary date for the giving of notice of a desire to terminate,

and in no way conflicted with the continuing effect from month to month of the agreement. The use of the words "from month to month" were relevant to the payment dates for service rendered as determined by the agreement. The actual termination takes place after the prescribed notice. Until this notice is given the contract is non-interruptible.

We now come back to the ambiguous words above quoted from paragraph 6(a).

■ It is a long established principle of law obtaining in this state that if the language of a written agreement is on its face ambiguous, the courts will look at the surrounding circumstances, at the situation of the parties, and the subject matter of the contract for aid in giving a construction to its language. Pollard v. Maddox, 28 Ala. 321.

■ Dealings of parties subsequent to the written contract are important as going to show construction by parties themselves while friendly. McGowin Lumber & Export Co. v. Camp Lumber Co., 16 Ala.App. 283, 77 So. 433(4).

■ The courts, in construing contracts, are entitled to have all the facts and circumstances going to show the conditions under which the parties contracted and what influenced them, to the end that the contract may be construed to give it such effect as the parties intended. McGowin Lumber & Expert Co. v. Camp Lumber Co., supra.

■ To arrive at the true sense in which parties have employed words of a written contract, courts may consider the occasion which gives rise to the contract, relation of the parties, and object to be accomplished. Obermark v. Clark, 216 Ala. 564, 114 So. 135, 55 A.L.R. 1153.

■ Since it is only by parol evidence that the circumstances under which a contract was made, relation of the parties and what was within their mutual knowledge, can be ascertained, admission of such evi-

dence does not infringe the rule that evidence is not admissible to contradict, add to, or vary written contract. Obermark v. Clark, supra.

It appears from the evidence in this case that the City had different rates for gas service furnished industrial consumers as was Flagg. Appellant, by the terms of its contract, elected to take the rate applicable to interruptible consumers which was cheaper than other elective rates. This election, as shown by the terms of the contract, permitted the City to curtail to zero the flow of gas to Flagg at any time the City desired to exercise its discretion, but only after notice of the necessity for such curtailment.

The City, according to the evidence, determined that on January 4, 1959, there was need for curtailment of Flagg's gas to zero at both plants. The period of curtailment was not to exceed two hours, towit, not later than 3:30 P.M., and so notified the manager of the plant situated on Sweetwater Avenue. Notice was given in time for the curtailment to take place. The manager of the plant failed to get this communication through to the proper person at the main plant.

The gas at the main plant was not cut or curtailed to zero and as a result plaintiff incurred an increased demand charge for one year which it had to pay under the terms of its contract with its supplier.

The pivotal question presented to the trial court and here for adjudication is whether appellant or appellee, under the terms of their written contract, was to shut off the gas when the City determined there was need for such curtailment.

A course of conduct as shown by the evidence established the fact that the City on numerous occasions, in accordance with its expressed contractual duty, gave notice to Flagg that gas consumption would have to be curtailed to zero. Defendant on numerous occasions after the receipt of such notices would itself close the valves and curtail gas consumption to zero.

Also evidence was admitted to show the manufacturing operations and process used by defendant at its plants in the production of its products which required the use of gas. This evidence showed that the quality of its products would be jeopardized without ample time being given to get ready for the curtailment of the gas supply. The tendency of the evidence was to show that this jeopardy would be minimized if Flagg did the curtailing by closing the valves on its premises that control the gas supply.

In accordance with the rule that trade terms and expressions peculiar to the business and not of common knowledge are subject to definition in their relation to the case in hand in pleadings and in proof, Moss v. Gulf States Steel Corporation, 224 Ala. 430, 140 So. 402, appellee offered expert testimony of witnesses acquainted with the natural gas business to explain the ambiguous words aforequoted, to the end that the evidence might clarify the meaning of these words. This evidence was properly admissible as an aid to the court in reaching a conclusion as to the intentions of the parties in the employment of the ambiguous words.

A great volume of evidence covering more than 400 pages of testimony was offered by the parties in support of their respective contentions. Both sides have filed with this court elaborate and exhaustive briefs that this court has considered. We have examined the evidence and the objections thereto, and it is our opinion that the trial court did not commit error in its rulings on admission.

Competent evidence was admissible to clear up the pivotal ambiguities and to show how the parties themselves interpreted the contract with respect to curtailment as alleged in paragraph 3 of count 3 of the complaint. If we undertook on this appeal to detail the evidence and cite supporting cases on every ruling made by the court on admission of evidence, we would extend this opinion beyond reasonable and practical length. The rulings of the trial

judge on evidence are sanctioned by many cases which approve admission of a wide range of evidence to clarify the ambiguities and to determine the intentions of the parties with respect to the use of ambiguous words or phrases. We have already cited the rules of law appertaining thereto.

We will address a few observations to count three of the complaint. It states a cause of action, is free from the assigned demurrer and is not amenable to the special pleas that assert that the Statute of Frauds is available to defendant as a defense. Paragraph 3 of the count does not, in our opinion, attempt to set up an independent agreement, but avers that the defendant by its course of conduct interpreted paragraph 6(a) of the contract as placing the duty of responsibility of shutting off the gas on it after notice given. The fact that the City on occasions checked to find out if Flagg has performed this duty does not, in our judgment, show that the City assumed this responsibility or that it intended to relieve Flagg from the duty to close the valves. This checking was merely a voluntary act or acts on the part of the City that were calculated to benefit Flagg from incurring damages for failure to fulfill its contractual duty. Likewise, it would serve to insure other consumers on a firm rate with natural gas for heating purposes during the extreme cold weather.

The general judgment of the trial court in this case is referable to count 3. This is in accordance with out holding in Kessler v. Peck, 266 Ala. 669, 98 So.2d 606(1), that a judgment will be referred to a good count if there is evidence to sustain it, and it will not be reversed because of a trial court's erroneous ruling on a demurrer to a defective count.

We will not undertake to review the validity of counts 1 and 2 for the reason that any errors therein would be without injury to defendant in view of the validity of count 3, which is supported by evidence. Supreme Court Rule 45, Revised Rules of the Supreme Court of Alabama, 261 Ala. XIX, XXXVII.

Our concluding observations will be addressed to the award of damages and the admeasurement thereof.

Defendant was informed by its contract (section 6(b) ) that its schedule of rates was based on "the present Natural Gas Tariff of the Alabama-Tennessee Natural Gas Company, the supplier of the Municipality, and approved by the Federal Power Commission, Washington, D. C.," and that any change in such Tariff would be reflected in the contract in the same amount by which the City's Commodity Charge is increased or decreased, but not to include a demand charge.

Therefore, under the provisions of this contract, Flagg had notice that the City was buying natural gas pursuant to this Tariff and the rates therein prescribed, then or later. It was charged with notice under this contract that the City's consumption was subject to a demand charge. The fact that no demand charge was to be reflected in the rates for Flagg is immaterial and irrelevant to the notice charged to Flagg. Flagg was charged with knowledge that its own gas consumption, authorized or unauthorized, would be reflected in the amount of demand charge that plaintiff would have to pay.

The inclusion in the contract that Flagg was not subject to a demand charge in the fixation of its rates does not exclude such a charge as an admeasurement of damages for breach of defendant's contractual duty or obligation to close the valves and turn off the gas after notice.

It is shown by the evidence in this case the amount of demand charges which plaintiff had to pay its supplier because of the failure of Flagg to shut off the consumption of gas to zero on January 4, 1959. The amount allocated to defendant is the amount of the judgment. Calculations employed by plaintiff and shown by the evidence would here serve no useful purpose. Suffice it to say that the trial court thought the allocation was correct. We agree.

: We think that the damages reflected in the judgment of the trial court were the natural and proximate consequence of the breach of the contract by defendant and were such as were reasonably supposed to have been within the contemplation of the parties at the time the contract was made. Winslett v. Rice, 272 Ala. 25, 128 So.2d 94(9).

We hold there was no reversible error on the part of the trial court in its rulings on the pleadings, the evidence, and in denying or overruling the motion for a new trial. The judgment is due to be affirmed and it is so ordered.

The foregoing opinion was prepared by B. W. Simmons, Supernumerary Circuit Judge, while serving on the Supreme Court at the request of the Chief Justice, and was adopted by this court as its opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, GOODWYN and COLEMAN, JJ., concur.