· 173 So.2d 85

**J. C. CROSBY et al.**

v.

**A. W. HALE.**

**6 Div. 859.**

Supreme Court of Alabama.

March 18, 1965.

Jerry O. Lorant, Birmingham, for appellant Crosby.

Corretti & Newsom, Birmingham, for appellant Jefferson Federal.

Herbert Ezzell, Birmingham, for appellee.

LAWSON, Justice.

The appeal is from a final decree of the Circuit Court of Jefferson County, in Equity.

In October, 1959, J. C. Crosby entered into a written contract with one W. F. Jones, a general contractor, wherein Jones agreed to construct a residence for Crosby on a lot in the City of Birmingham for the sum of $10,900. The contract provided that Jones was to furnish all materials and labor necessary to construct the residence in accordance with prints and specifications submitted to Jefferson Federal Savings & Loan Association, which issued a construction loan commitment to Crosby. The loan commitment was in the amount of $7,000 and Crosby was required by Jefferson Federal to put up the difference between $7,000 and $10,900 in a special account with Jefferson Federal so that there would be an adequate amount on hand to meet Crosby's obligation under the terms of his construction contract with Jones.

The contractor, Jones, abandoned the job before it was completed and Crosby had to

complete the construction of his residence at a cost considerably in excess of the contract price.

Before he abandoned work on the Crosby residence Jones secured a considerable amount of building materials from Super Highway Lumber & Supply Company, which materials Jones used in the construction of the Crosby residence. Jones did not pay Super Highway for all of the materials so obtained and used.

On June 22, 1960, A. W. Hale, individually and on behalf of Super Highway Lumber & Supply Company, in which name he did business, filed his bill in the Circuit Court of Jefferson County, in Equity, against Crosby, Jones and Jefferson Federal.

In Paragraph 2 of his bill, Hale alleged in substance that the building materials were furnished "under an oral contract with the respondent, J. C. Crosby, his agent, servant or employee, William F. Jones;" that at the time the building materials were so furnished and used and at the time the suit was filed, Crosby was the owner of the property on which the residence was being constructed, subject to a mortgage "in favor" of Jefferson Federal in the amount of $7,000.

Paragraph 3 alleges that Jefferson Federal entered into an indemnity agreement with Hale on March 1, 1960, wherein Jefferson Federal agreed to guarantee and indemnify Hale to the extent of $2,000 if Hale would furnish said materials; that Hale relied upon that agreement and did furnish materials used in the making of an improvement on the Crosby property; that Jefferson Federal has failed and refused to comply with the indemnity agreement in that it has failed to pay anything to Hale for the materials so furnished.

In Paragraph 4 of his bill Hale alleged that the sum of $1,675.24 is due him for materials which he furnished.

Paragraph 5 alleges that Hale notified Crosby and Jefferson Federal "of his claim of lien against said property, as provided for under the laws and statutes of Alabama; that Hale filed a lien in the Probate Office of Jefferson County, Alabama, on the 6th day of June, 1960, * * * within six months from due date of said account, which was on, to wit, the 28th day of February, 1960"; that Hale's lien is a first lien and superior to the mortgage held by Jefferson Federal, the proceeds of which mortgage were used "in the construction and improvement of said real estate."

Paragraph 6 alleges that Hale's bill in equity to enforce his lien was timely filed.

In Paragraph 7 it is alleged that the materials "were furnished on" certain described real estate.

Paragraph 8 alleges that Hale seeks to enforce a lien on the described real estate in the amount of $1,675.24, which shall be a first lien and superior to Jefferson Federal's mortgage.

In Paragraph 9 it is alleged that the last items of materials were furnished on February 28, 1960, "all of which were approved and accepted by the Respondent, J. C. Crosby."

Aside from the prayer for process, the bill prayed:

"* * * and that upon final hearing of this cause it will be decreed that your Complainant has a lien against said property in the amount of One Thousand Six Hundred Seventy-five and 24/100 ($1,675.24) Dollars plus a reasonable attorney's fee, which shall be a first lien and superior to said mortgage executed in favor of Jefferson Federal Savings and Loan Association; that your Honors will order that the property be sold in payment and in satisfaction of the lien securing said indebtedness; that in the alternative, your Honors will render a judgment against the said Jefferson Federal Savings and Loan Association in favor of your Complainant, as a result of said indemnity or guarantee agreement

entered into by your Complainant and the said Jefferson Federal Savings and Loan Association. Your Complainant prays for such other, further or different relief which he, in equity, may be entitled, etc."

A decree pro confesso on personal service was entered against the respondent, Jones.

Crosby and Jefferson Federal filed separate answers, which were later amended.

Following a hearing wherein witnesses were examined in the presence of the court, the following decree was rendered:

"THIS CAUSE was heretofore heard ore tenus, argued and submitted upon pleadings and proof as noted by the solicitors, and with the aid of memorandum briefs for which the Court expresses thanks. Upon consideration and advisement the Court is of opinion and finds that complainant is entitled to and must be awarded some degree of relief. The case is not free of the difficulties usually presented where an owner, materialmen, and a lending institution making the construction loan, all trying to act in good faith, are burdened with a loss and confusion due to abandonment before completion of the work by a prime 'contractor' who disappears leaving no financial responsibility behind.

"It is CONSIDERED, ADJUDGED AND DECREED by the Court as follows:

"1. That complainant have and recover of the respondent William F. Jones the sum of $1,675.24, as the party primarily liable therefor, and all costs, for which let execution issue forthwith.

"2. That, in the event such execution be returned 'no property found', then that complainant have and recover of the respondents J. C. Crosby and Jefferson Federal Savings and Loan Association, a corporation, the sum aforesaid, together with costs, jointly and severally, for which let executions issue after twenty days from the date of the Sheriff's return under paragraph No. 1 of this decree.

"3. Should either of the last aforementioned two respondents be required to pay all or any part of this monetary decree such respondent shall be entitled to exoneration by recovery thereof from respondent Jones, and shall also be entitled to contribution from the other respondent as to any payment exceeding one-half the amount first above set forth.

"4. Insofar as the bill seeks enforcement of a materialman's lien, it is DECREED by the Court that such relief be and it hereby is denied."

Separate applications for rehearing filed by Crosby and Jefferson Federal were overruled.

Crosby and Jefferson Federal appealed to this court. They have made separate assignments of error and have filed separate briefs.

There was no cross-appeal or cross assignments of error, so we are not concerned with that part of the decree which denied the enforcement of a materialman's lien.

As W. F. Jones, the contractor, did not defend the suit and made no objection to the rendition of a decree against him, and has not joined in the appeal, although given the notice required by § 804, Title 7, Code 1940, we are not concerned here with the personal decree rendered against him.

Section 48, Title 33, Code 1940, gives to lien claimants a concurrent remedy in equity. Floyd v. Rambo, 250 Ala. 101, 33 So. 2d 360; Marshall Memory Gardens, Inc., v. Long, 265 Ala. 164, 90 So.2d 260.

We will consider first the appeal of J. C. Crosby, the owner.

The jurisdiction conferred upon courts of equity by § 48, Title 33, supra,

being concurrent with a proceeding at law, the complainant may have a general judgment against the contracting owner for the agreed price for the work and material furnished under the contract, though he may not be able to establish the mechanic's lien under the statute. Floyd v. Rambo, supra, and cases cited.

As we have shown, complainant in Paragraph 2 of his bill alleged that he furnished the building materials under an oral contract with respondent Crosby, his agent, servant or employee William F. Jones. He did not have a special prayer wherein he prayed for a personal judgment or decree against Crosby. But there was a prayer for general relief which, for the purposes of this appeal, we will treat as having been sufficient, together with the averments of the bill, to authorize a personal judgment or decree against Crosby if the proof justified such relief. See Atkins v. Atkins, 253 Ala. 43, 42 So.2d 650.

■ But the proof was not, in our opinion, sufficient to support the personal decree or judgment against Crosby.

There is absolutely no evidence tending to show that Crosby purchased the materials, promised to pay for them or authorized complainant to charge them to him. The statement in complainant's brief that Crosby applied to complainant for credit is not supported by the record. There is no evidence going to show that Jones, the contractor, was an agent, servant or employee of Crosby. And there is no evidence to support the assertion in complainant's brief that one Promise Perry, who accompanied Jones to complainant's place of business to make arrangements for the purchase of materials, "was working on the job for J. C. Crosby." Perry was an employee of Jones. Perry and complainant so testified and there was no evidence to the contrary. Perry, a carpenter, had formerly worked for complainant. There was no effort on the part of complainant to notify Crosby in writing or otherwise that he was letting Jones have building materials with

which to perform his contract with Crosby. The great weight of the evidence as we view it is to the effect that Crosby did not even know that Jones was acquiring materials from complainant until after Jones had abandoned the job. The statement in complainant's brief that complainant relied upon Crosby's "credit standing" finds no support in the evidence. Neither complainant nor his manager, Moore, made inquiry as to Crosby's credit. Complainant never sent Crosby a bill or statement. In fact, the evidence shows without dispute that when Jones and his employee Perry first came to complainant's place of business on January 7, 1960, to make arrangements to secure materials on credit, they talked with Moore, who called Brooks Yeilding, the secretary of Jefferson Federal, and if complainant extended credit to Jones on any basis other than Jones' own responsibility, it was a statement Moore said that Yeilding made to him. Yeilding was not Crosby's agent for the purpose of acquiring building materials.

■ Testimony was adduced on behalf of complainant that on an occasion when Crosby visited complainant's place of business, complainant advised Crosby that although Jones was primarily liable for the debt owed complainant that Crosby would have to pay it if Jones did not. According to complainant's evidence, Crosby said, in effect, that he realized that such was the situation. This conversation, according to complainant, occurred sometime between February 27 and March 1, 1960. Crosby denied that there was any such conversation. But if it be conceded that such a conversation did occur, Crosby's statement cannot be considered as a legal promise to pay for the material, all or most of which had already been delivered to the job without Crosby's knowledge. Crosby's response to complainant's statement, if made as complainant claims, is not proof of any original undertaking or obligation on the part of Crosby and if construed as an oral promise to pay the obligation of Jones, it would be unenforceable under the statute of

frauds. Subsec. 3, § 3, Title 20, Code 1940; Boykin v. Dohlonde & Co., 37 Ala. 577. See American Casualty Co. of Reading, Pa., v. Devine, 275 Ala. 628, 157 So.2d 661. While the statute of frauds was not pleaded by Crosby, complainant's right to recover against Crosby on a contract or promise not alleged in the complaint must be viewed in the light of the statute of frauds.

In our opinion, under the evidence adduced, the complainant was not entitled to a personal judgment or decree against the respondent Crosby for any sum. The evidence does not show that Crosby or any servant, agent or employee of his made an express oral contract with complainant as alleged in his complaint, nor does the evidence show an implied contract.

We have responded to appellee's insistence that the personal judgment or decree against Crosby should be allowed to stand because the evidence shows an implied contract, although it has been held that where a complainant in an equitable action to enforce a mechanic's lien pleads an express oral contract, he cannot recover on an implied contract or upon *quantum meruit*. Lautenbach v. Meredith, 240 Iowa 166, 35 N.W.2d 870. See Abinet v. Mediavilla, 5 App.Div.2d 679, 169 N.Y.S. 2d 231.

We came now to a consideration of the appeal of Jefferson Federal.

In his bill, complainant based his claim to a personal judgment against Jefferson Federal on the written "indemnity agreement" of March 1, 1960. Jefferson Federal in its answer pleaded, among other things, the statute of frauds.

Jefferson Federal in its brief filed in this court asserts that the instrument of March 1, 1960, is violative of the statute of frauds and that the trial court erred in not so decreeing. Hale, the appellee, of course, takes a contrary position in his brief, but he says also that even if we should hold that the instrument of March 1 is invalid, nevertheless we should affirm the trial court's action in awarding him a personal

judgment or decree against Jefferson Federal for the reason that the proof shows a valid oral contract under date of January 7, 1960, wherein Jefferson Federal promised "to see that we got our money."

As an aid to the interpretation of the instrument of March 1, 1960 (Merchants Nat. Bank of Mobile v. Hubbard, 220 Ala. 372, 125 So. 335; Flagg-Utica Corp. v. City of Florence, 275 Ala. 475, 156 So.2d 338), we will summarize as briefly as possible the circumstances leading up to the execution of that instrument, including the alleged contract of January 7, 1960, but it is not done for the purpose of determining whether or not that contract was sufficient upon which to predicate the personal judgment rendered against Jefferson Federal for the reason that that contract was not relied upon in the complaint. In the early case of Brantley v. West, 27 Ala. 542, 550, this court said:

"The general rule is, that no relief can be granted upon matters not charged in the bill, although the same may appear in proof, for the decree must be predicated upon the allegations and the proof. This rule is founded upon the substantial reason, that the bill, by its allegations, ought to apprise the defendant of what he is expected to meet and defend against. If a contract materially different from that set up in the bill might be proved, and a decree rendered upon such proof, the defendant would often be taken by surprise, and be denied the privilege of making his defense. Indeed, all proof outside of the allegations of the bill is irrelevant and improper. Story's Eq.Pl., § 257; McKinley v. Irvine, 13 Ala. [681] 693–694, and cases there cited."

As we have shown above, Crosby entered into his contract with Jones, the contractor, in October of 1959. We have also shown that he obtained a loan commitment from Jefferson Federal in the amount of $7,000 and that he put up with Jefferson Federal the sum of $3,900 so that

his obligations under his contract with Jones could be met.

Jones began work on the residence on Crosby's lot in November or December of 1959. He obtained building materials from suppliers other than Super Highway prior to January of 1960.

During the first few days of January, 1960, Jones, at the suggestion of his employee, Perry, ordered some supplies from Super Highway, which were delivered on the job site and were paid for on delivery. On January 7, 1960, Jones, accompanied by Perry, went to Super Highway's place of business and there contacted the manager, one Moore. They sought to obtain supplies, on credit, to be used in construction of the Crosby residence. Moore was not willing to extend credit to Jones and upon being informed by Jones that Jefferson Federal had made a loan to Crosby for the construction of his residence, Moore inquired of Jones as to whether or not he would object to Moore calling Brooks Yeilding, the secretary of Jefferson Federal, relative to the Crosby loan. Jones replied in the negative. Moore called Yeilding. Moore says that Yeilding told him in the telephone conversation that Jefferson Federal would see that Super Highway got its money for materials supplied to Jones for the construction of the Crosby residence. Yeilding admitted that he had the telephone conversation with Moore on or about that date, but denied that he made the statement attributed to him by Moore. Yeilding said that he only verified the fact that his company had made or was making a loan to Crosby and that his company was furnishing the construction money.

After that telephone conversation, Super Highway let Jones have building supplies on credit, which were used in the construction of the Crosby residence.

On February 24, 1960, Jones owed Super Highway $1,393.55. On that date Hale, the complainant below, the appellee here, called on Yeilding in an effort to secure funds with which to satisfy Jones' obligation to him. Yeilding refused to make any such payment and told Hale that no payment would be made until Jones had completed the job.

On or about February 26 Jones secured his second "drawing" from Jefferson Federal. After that "drawing" or payment, Jones had received approximately two-thirds of the amount due him on his contract with Crosby, although tendencies of the evidence are to the effect that the house was only about one-half completed.

On February 29, 1960, Jones' wife put in an order for certain building materials, some of which Super Highway had to order delivered on the job site by other suppliers. Shortly thereafter Crosby, the owner, apparently became concerned as to whether Jones was going to complete the construction of the residence. He apparently learned for the first time that Jones had been securing building supplies from Super Highway, so he called Hale and made inquiry as to whether or not Jones had paid his account and advised Hale of the fact that Jones had secured his second "drawing" on the preceding Friday. Immediately after that telephone call Hale cancelled the order which had been placed by Jones' wife and had another supplier who had delivered a part of the order to the job site return the material so delivered to his place of business.

When Jones learned of this development, he went to see Hale, who informed him that he would let him have no more building materials until he had paid the sum of $250 on his account and had obtained from Jefferson Federal a guaranty that the bill would be paid. Jones then went to see Yeilding of Jefferson Federal and told him of the position taken by Hale. Yeilding then told Jones to go back to see Hale and tell him to write out what he wanted Yeilding to sign on behalf of Jefferson Federal. When Jones returned to Hale's place of business he brought with him $200 in cash, but the evidence does not sustain a finding that it was obtained from Jefferson Federal. Upon Jones' return Hale had his secretary type most of

the instrument of March 1, 1960, which we will set out hereafter. Jones then went back to Yeilding with the instrument, which was not signed by Hale. Yeilding would not sign the instrument until after Hale signed it and Yeilding typed on the instrument the statement, "Effective when countersigned by SUPER HIGHWAY LUMBER & SUPPLY COMPANY." Jones carried the instrument back to Hale, who signed it, and then carried it to Yeilding, who signed it on behalf of Jefferson Federal Savings & Loan Association. The instrument was then either delivered back to Hale by Jones or mailed to him by Yeilding. Jones placed his "O.K." on the instrument at a later date.

The instrument in question reads as follows:

"SUPER HIGHWAY LUMBER
& SUPPLY CO.
3016 North 9th Avenue
Phone HA 5-5742
BESSEMER, ALABAMA
March 1, 1960

Jefferson Federal Savings & Loan Assn
2113 No 21 St
Birmingham, Alabama.
Mr. Brooks Yeilding;;

In regard to W. F. Jones Contractor and J. C. Crosby Job located at 579-63rd St South. Before final settlement is made on the above named job, We kindly ask that you make one check payable to Super Highway Lumber and Supply Co for $2,000.00 more or less as our ledger shows at the time of Settlement.

If you will guarantee our moneys to this extent, we will continue with said contractor to Completion.

JEFFERSON FEDERAL SAVINGS
& LOAN ASSN.
Brooks Yeilding
Effective when countersigned by SUPER HIGHWAY LUMBER & SUPPLY COMPANY
O. K. Wm. F. Jones

SUPER HIGHWAY LUMBER
& SUPPLY CO.
Phone Bess. 5-5742-3016 Ninth Ave.
Bessemer, Alabama
36-5424               A. W. Hale
Lots 26-27-Blk 9
Oakhurst Sur-

Amt.
$1675.20"

After he had received the $200 in cash from Jones and after the execution of the instrument set out above, Hale let Jones have the supplies which his wife had ordered on February 29.

The evidence is somewhat in conflict as to exactly when the house was completed and as to when Jones quit work on the job, but we think it clear beyond peradventure that Jones did very little, if any, work in connection with the construction of the residence for Crosby after March 1, 1960, and that the residence at that time was only about one-half completed. Perry, Jones' employee, did testify that on March 14, 1960, at Jones' request, he put down some flooring with Crosby's help and that Jones was at the job site on that day. Crosby denied that he saw Jones on that occasion.

Except where conflicts are shown, the evidence summarized above is in the light most favorable to complainant.

■ We lay aside any consideration of the question as to whether the instrument of March 1, 1960, sufficiently shows on its face a valuable consideration for the obligation assumed by Jefferson Federal to comply with the statute of frauds, for we are clear to the conclusion that when the said instrument is viewed in the light of the circumstances which led up to its execution that Jefferson Federal did no more than agree that before making a final settlement with Jones, it would make a check payable to Super Highway in a sum equal to the amount of money which Jones owed Super Highway at the time for final settlement, that is, when Jones had fulfilled his

obligations under his contract with Crosby by completing the residence. The agreement also purported to limit the amount of money to be turned over to Super Highway to the sum of $2,000 more or less."

Jones did not fulfill his obligations. He did not complete the residence. The time did not come for a final settlement with Jones and, hence, Jefferson Federal was under no obligation under the terms and provisions of the March 1st instrument to make any payment to Super Highway out of the funds of Crosby in its possession.

The decree of the trial court is reversed insofar as it awards personal judgments or decrees against J. C. Crosby and Jefferson Federal Savings and Loan Association.

Reversed and remanded.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.