Appellant, United States Fidelity and Guaranty Company, appeals from a declaratory judgment rendered in the Circuit Court of Coffee County in which appellant requested the interpretation of the following insurance contract clause:
 "It is understood and agreed that no coverage is afforded under the policy for any unit which is driven by or in the custody of Joe Robert (Buddy) Beck."
Appellee, Rachel Cook as executrix of the estate of Mace Cook, deceased, cross-appealed, contending the circuit judge erred in refusing to determine the coverage under the policy of a party to the accident, Jack Michael Holmes.
According to the facts as agreed to by the parties, appellant had issued a liability insurance policy to Elba Wood Products, a corporation, on February 25, 1974. The policy was in full force and effect on April 4, 1975, the date of the accident which is the basis of two law suits[1] for which coverage is claimed and which are now stayed pending the rendering of this decision. The policy provided coverage for a van type trailer involved in the accident along with *Page 1307 
other equipment not involved in the accident.
The accident leading to the request for declaratory judgment occurred in Enterprise, Coffee County, Alabama. Jack Michael Holmes was driving a tractor truck owned by Joe Robert (Buddy) Beck. The truck was pulling a trailer owned by Elba.
Beck, who was in the trucking business, had an oral agreement with Elba to provide trucks to pull trailers loaded with wood chips to Cedar Springs, Georgia. Beck employed drivers to haul the loads and only occasionally drove a load himself. At no time had Beck owned any of the trailers. All of the trailers, including the one in the accident, were owned by Elba. Beck was paid on a per load basis and he paid his drivers on a per load basis.
According to a deposition of Beck taken by Cook in Civil Action No. 132-74 and entered as part of the record (the appellant was not at the deposition), Beck and Elba had a history of prior dealings beginning just before Christmas in 1972 when they entered into an oral agreement. Beck did not own a truck at that time but subsequently bought a Mack truck. Title to the truck was in his name but with Elba's consent he put the license in Elba's name to avoid problems of "rights" from the Alabama Public Service Commission. Insurance for the truck was in Beck's name but was paid for by Elba. During the first part of 1973 Beck sold the Mack truck and bought the Chevrolet truck involved in the accident. Approximately a year prior to the accident Beck had a disagreement with Elba, left the company, and leased his truck to Watkins Truck Lines. Within six months after leaving Elba, Beck rejoined the company.
One reason Beck left the company was that they wanted him to reimburse them for the insurance. When he returned to work for Elba, he told them he could not afford the insurance. His understanding was that the truck was to be included in Elba's policy, though the owners of Elba never specifically stated it would be.
After the accident the following conversation transpired between Beck and one of the owners of Elba, as told by Beck:
 "A. I come from the wreck, come back to Mace's, and told them that if there was anything I could do just to call me. Then, I come from there to the drugstore over there (indicating) looking for Tatum. He was parked in front of the store there and he was coming down the street with a boat paddle in his hand, so anyway I said, `Ray, we have had a bad wreck. We had better get all of our ducks in line, because the insurance is going to have to be paid,' and he said, `What insurance?'
"Q. That's the only statement he made to you?
 "A. Yes, that surprised me. It really surprised me. He said, `I think there's a letter in the file from Robert Morrison's to the effect that you would not be insured by Elba Wood Products.' So I jumped on around to Mr. Marsh's, and he more or less said the same thing."
The issue is whether the trailer was "driven by or in the custody of Joe Robert (Buddy) Beck". The truck pulling the trailer was not one of the units listed in the insurance policy and none of the parties argues that it is covered by the policy. Beck was not driving the trailer; technically, a trailer could not be driven by anyone, only pulled. Therefore, if the exclusion is to apply to the accident in question, the trailer must have been in the custody of Beck as it was being pulled by Holmes, Beck's employee.
The cardinal principle in the interpretation of any contract is that the intention of the parties should control. 43 Am.Jur.2d, § 260 at 318; Alabama Farm Bureau Mutual CasualtyInsurance Company v. Goodman, 279 Ala. 538, 188 So.2d 268
(1966). In ascertaining the intent of the parties, the terms used are to be taken in their plain, ordinary and popular sense if they are clear and unambiguous and have not acquired a technical meaning. 43 Am.Jur.2d, § 265 at 324; Franklin LifeIns. Co. v. Lewis, *Page 1308 36 Ala. App. 313, 55 So.2d 518 (1951); Universal Underwriters Ins.Co. v. Marriott, 286 Ala. 231, 238 So.2d 730 (1970); AlabamaFarm Bureau Mutual Cas. Ins. Co. v. Goodman, supra. If doubt arises as to the meaning of the terms used, then they will be interpreted against the party who has drawn the contract. 43 Am.Jur.2d, § 271 at 329; Trans-Continental Mutual InsuranceCompany, Inc. v. Harrison, 262 Ala. 373, 78 So.2d 917 (1955);State Farm Mutual Automobile Insurance Co. McInnish, 284 Ala. 492, 226 So.2d 149 (1969).
 "The rule is well established that if exceptions, exclusions, and exemptions from, or limitations of, the liability of an insurer are not expressed plainly and without ambiguity, they will be construed strictly against the insurer, and liberally in favor of the insured, in order that the purpose of insurance shall not be defeated." 43 Am.Jur.2d, § 279 at 340-341.
However, that is not to say that insurance companies cannot write their contracts in any legal form they wish. 43 Am.Jur.2d, § 279 at 341; Alabama Farm Bureau Mutual Cas. Ins.Co. v. Goodman, supra.
"Custody" as defined by Webster's New Collegiate Dictionary, 1975 ed., is "immediate charge and control exercised by a person or an authority." According to Black's Law Dictionary, Revised 4th Ed., 1968,
 "The word is defined as the care and possession of a thing, and means the keeping, guarding, care, watch, inspection, preservation or security of a thing, and carries with it the idea of the thing being within the immediate personal care and control of the person to whose custody it is subjected; charge; immediate charge and control, and not the final, absolute control of ownership, implying responsibility for the protection and preservation of the thing in custody."
The appellant submits the following definition of custody:
 "`Custody' . . . `means to have in charge or safe keeping, connotes control, and includes as well, although it does not require, the element of physical or manual possession, implying a temporary physical control merely, and responsibility for the protection and preservation of a thing in custody. * * * The term * * * carries with it the idea of thing being within the immediate personal care and control of the person to whose custody it is subjected; charge; charge to keep, subject to order or direction; immediate charge, and control and not the final absolute control of ownership.'" National Fire Insurance Company v. Davis, Tex.Civ.App., 179 S.W.2d 316 (1944).
By all these definitions Holmes had custody, not Beck. Holmes was pulling the trailer. Only he could have immediate charge and control over it; only he could keep, guard, care for and preserve it as it was being pulled down the highway.
Appellant argues that the clause should be interpreted in light of the history of dealings with Elba and Beck. "It has been said in this connection that one of the most satisfactory tests for the ascertainment of the true meaning of an insurance contract is to place oneself in the position of the contracting parties and to view all of the facts and circumstances surrounding them in order to determine what they meant by the phrases and words of the instrument." 43 Am.Jur.2d, § 260 at 319-320. See Flagg-Utica Corporation v. City of Florence,275 Ala. 475, 156 So.2d 338 (1963). However, the circumstances surrounding the contract are only considered where the terms are ambiguous. Flagg-Utica Corporation, supra. Assuming,arguendo, that the terms are ambiguous, then the ambiguities should be interpreted against the party drawing the contract if the circumstances surrounding the contract do not make the terms clear.
When Beck was first associated with Elba in 1972, Elba paid for Beck's insurance. After leaving them and then becoming reassociated with them, Beck requested Elba to include him in their insurance policy. While he believed he had been included, for some reason not explained in the *Page 1309 
record, he was specifically excluded. However, this history does not show that the intent was to also exclude anyone working for Beck.
Similarly, the fact that Beck only occasionally drove the trucks himself does not aid appellant's interpretation. On the contrary, this fact lends support to the construction given the clause. Elba owned and maintained the trailer; it would conceivably be liable for the negligent maintenance of that trailer no matter who was pulling it. If Beck himself pulled the trailers most of the time, then Elba would be carrying the risk for the trailers most of the time, in which case Elba would have purchased essentially nothing when it bought the insurance on the trailers. Elba purchased "something" only because Beck rarely pulled the trailers himself.
Thus, at the very least, the circumstances surrounding the contract leave the clause ambiguous, in which case it would be interpreted against the drafter, Fidelity. Had Fidelity intended to exclude the situation before us, it should have simply added, "and/or driven by or in the custody of Beck's agents."
On the cross-appeal Cook alleges that the trial judge erred in refusing to determine whether Holmes was covered by the policy. The issue arose at the trial from the following discussion:
"MR. HOLMES: If I could say something, Judge?
 "THE COURT: Yes, sir. Do you want to put this in the form of testimony?
"MR. HOLMES: Yes, sir.
"(The witness was placed under oath by the court.)
 "MR. HOLMES: Judge, what I am trying to figure out, is all I can get out of the insurance policy, what I am told, is the exclusion made by Joe Beck. I don't know what is happening; I don't have a lawyer — I really can't afford one. I would like to know whether I have coverage or not.
 "THE COURT: What do you have to say about that, gentlemen?
 "MR. FULLER: I think that is the whole subject of this hearing.
 "THE COURT: Would you say that would be the determination for this Court, regardless of whether he is here asking as a cross-action —?
 "MR. FULLER: Yes, sir. It is the plaintiff's position that Mr. Holmes was an employee of Mr. Beck, and acting within the line and scope of his authority at the time, that he was driving for Mr. Beck and that the trailer on this occasion was picked up by him; that he went by Mr. Beck's home and conferred with him on the afternoon he picked it up, before the accident occurred the next morning, and then went to the mill and dropped off the load and started back. Now, the exclusionary part says driven by or in the custody of Mr. Beck, and we are saying that the custody of the agent is the custody of the master. I am saying that, indirectly, in answer to what he is saying.
 "THE COURT: I have no objection to determining that and treating it as such. He is here representing himself and he may be in default, but I think we would be ducking the issue that might later come into play, if we don't decide it now.
 "MR. FULLER: That he is covered under the named insurer, rather than excluded, is that what he is saying?
 "THE COURT: Of course, I don't know whether he knows what he is saying, you have to translate the legal terminology, but I thought it might be one of the things that could come into play. I will say for the record, I am not familiar with the complaint and pleadings, or the evidence. You have all the depositions and I haven't; I don't know how he would be in it, but let's say he is asking for the Court to determine this issue, whether he is covered or not, and I imagine it makes little difference to him how he is covered. He's talking about is he covered personally, on the policy.
 "MR. TURNER: I talked to him and advised him of the terms of the policy. This is really what he asks the court for, *Page 1310 
from what I understand, and he doesn't have it in proper form.
 "THE COURT: I understand from you gentlemen, that if the Court will do this, you gentlemen have no objection?
"MR. JACKSON: No, sir.
 "MR. FULLER: No, sir. We will like to make it clear we are not waiving anything under that omnibus clause.
 "THE COURT: It is understood you will not be waiving anything. You would insist on everything you got in here.
 "MR. TURNER: Your Honor, in line with the plaintiff's agreement and to expedite this thing, I have my authorities prepared.
 "THE COURT: I am sure the depositions cover all this, the factual situation leading up to this, whatever it was?
"MR. FULLER: Yes, sir.
"END OF HEARING."
Whether Holmes is covered by the policy is a question requiring considerations that go beyond the interpretation of the exclusionary clause. When the judge agreed to decide whether Holmes was covered, the issue had been presented to him by Mr. Fuller, attorney for Fidelity, as though the interpretation of the exclusionary clause would, by necessity, lead to a decision as to Holmes' personal coverage. While that would be true if the exclusionary clause had applied to the trailer, the converse is not necessarily true. When the judge agreed to decide the question, he also noted that
 "I will say for the record, I am not familiar with the complaint and pleadings, or the evidence. You have all the depositions and I haven't; I don't know how he would be in it. . . ."
At the time of the hearing the issues surrounding the question were not clearly drawn. In his opinion the trial judge added:
 "The Court makes known however, that if the attorneys for the parties will all join in a written request to this court formulating the issues concerning the Holmes request, that it will determine the issue requested by Holmes on the evidence here under consideration."
Under this set of facts, the trial judge was not under any obligation to decide Holmes' personal coverage under the policy. The judgment is therefore affirmed.
AFFIRMED.
All the Justices concur.
[1] Civil Action No. 132-74, Rachel Cook v. Elba Woods Productset al. and Civil Action No. 51-75, W.C. Grissett v. Elba WoodProducts et al.