The plaintiff, Reeves Cedarhurst Development Corporation ("RCDC"), appeals from a summary judgment in favor of the defendants, First Amfed Corporation; First Services Corporation of Huntsville, Inc. ("FSC"); and First American Federal Savings and Loan Association ("FAFSL"), in a breach of contract action. We affirm.
FSC and FAFSL are wholly owned subsidiaries of First Amfed, a savings and loan holding company. This suit concerns a "Purchase/Option Agreement" between FSC and RCDC, executed on April 18, 1989. Under this agreement, FSC granted RCDC an option to purchase real estate owned by FSC and located in the Cedarhurst Planned Unit Development in Madison County, Alabama. A portion of the agreement was entitled "Loans Offered by First American Federal Savings Loan Association." That portion contained the following section stating terms pursuant to which RCDC could obtain construction loans from FAFSL:
 "(1) Close in Name of Corporation (no personal endorsements).
 "(2) Loan amount to be 75% of appraisal of lots and plans (appraisal by First American Federal Appraisal Department).
"(3) One year term.
 "(4) Interest rate, New York Prime (Chase Manhattan Bank) adjusted with change in Prime Rate.
"(5) Accrued Interest is payable quarterly.
 "(6) Construction funds disbursed upon progress of construction. Lender to make checks payable directly to suppliers, subs, etc. Interest charged only on funds disbursed.
 "(7) Closing Cost is 1% of loan amount plus third-party costs."
The following words were printed at the foot of this section: "PURCHASER IS UNDER NO OBLIGATION TO USE FIRST AMERICAN FEDERAL FINANCING." The agreement was signed by Morris Anderson, in his capacity as chairman of the board and chief executive officer of both FSC and FAFSL, and Sandra Payne, as president of RCDC.
On November 12, 1990, RCDC notified FAFSL that pursuant to the April 18, 1989, purchase/option agreement, RCDC was exercising its option to purchase a lot in the Cedarhurst development and that it was "seeking a construction loan from [FAFSL], under the terms of the Purchase/Option Agreement." By the date of that notification, George Ragsdale had replaced Sandra Payne as president of RCDC. On December 17, 1990, Morris Anderson notified RCDC that FSC was prepared to deed RCDC the Cedarhurst lot upon receipt of the purchase price, but that FAFSL could not extend RCDC a construction loan because RCDC had not demonstrated that it possessed sufficient funds to assure completion of the existing condominium construction projects. RCDC never tendered the purchase price for the Cedarhurst lot.
On February 8, 1991, RCDC filed this action against First Amfed, FSC, and FAFSL. RCDC claimed that under the April 18, 1989, purchase/option agreement FAFSL was obligated to lend RCDC the funds necessary to purchase property from FSC, and that FAFSL's failure to do so constituted a breach of contract. RCDC sought damages and specific performance.
On March 9, 1992, the defendants moved for a summary judgment. On March 11, 1992, the defendants filed a motion to strike RCDC's jury demand. On March 13, 1992, the trial court granted the defendants' motion to strike. On April 20, 1992, the trial court entered a summary judgment in favor of the defendants. RCDC appeals.
We first review the propriety of the defendants' summary judgment. Because we conclude that the defendants were entitled to the summary judgment, we need not consider the argument that the trial court erred in striking RCDC's jury demand. *Page 186 
"In reviewing the disposition of a motion for summary judgment, we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact" and whether the movant was "entitled to a judgment as a matter of law." Bussey v. John DeereCo., 531 So.2d 860, 862 (Ala. 1988) (citing Chiniche v.Smith, 374 So.2d 872 (Ala. 1979)); Rule 56(c), Ala.R.Civ.P. When the movant has carried the burden of making a prima facie showing, by admissible evidence, that there is no genuine issue of material fact, the party opposing the summary judgment motion has the burden of presenting substantial evidence creating a genuine issue of material fact. Bass v.SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98
(Ala. 1989); Ala. Code 1975, § 12-21-12. "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. ofFlorida, 547 So.2d 870, 871 (Ala. 1989); Ogle v.Long, 551 So.2d 914, 915 (Ala. 1989). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant, resolving all reasonable doubts against the movant. Hanners v. BalfourGuthrie, Inc., 564 So.2d 412, 413 (Ala. 1990); Wilsonv. Brown, 496 So.2d 756, 758 (Ala. 1986); Harrell v.Reynolds Metals Co., 495 So.2d 1381, 1383 (Ala. 1986).
This appeal presents the following question: Did the trial court properly conclude that there was no genuine issue of material fact regarding whether FAFSL was obligated by the terms of the April 18, 1989, purchase/option agreement to lend RCDC funds necessary to purchase property from FSC?
RCDC does not dispute the fact that the purchase/option agreement does not expressly obligate FAFSL to lend RCDC money for the purchase of Cedarhurst lots. Instead, RCDC argues that the agreement was ambiguous because the important terms of the "construction loan" section were not stated in complete sentences. Hence, RCDC argues that the parties' course of dealing should control. RCDC presented evidence that FAFSL made four construction loans to RCDC before its request of November 12, 1990, and that RCDC used the proceeds from these loans to purchase Cedarhurst lots from FSC.
Conversely, FAFSL contends that the terms of the purchase/option agreement were not ambiguous, that the agreement merely outlined the type of construction loan available through FAFSL, and that nothing in the agreement committed FAFSL to lend RCDC funds for the purchase of Cedarhurst lots. FAFSL further contends that, even if the terms of the purchase/option agreement were ambiguous, the intention of the parties, not the course of dealing, would be the determining factor in construing the agreement. FAFSL presented evidence from Morris Anderson and Sandra Payne that neither party intended for the purchase/option agreement to constitute a loan commitment by FAFSL.
"Whether a contract is ambiguous is a question of law for the trial court to determine." P S Business, Inc. v. SouthCentral Bell Tel. Co., 466 So.2d 928, 931 (Ala. 1985) (citing Haddox v. First Alabama Bank of Montgomery,449 So.2d 1226, 1228 (Ala. 1984); Food Service Distributors,Inc. v. Barber, 429 So.2d 1025, 1028 (Ala. 1983)). In interpreting a contract, the " 'words of the agreement will be given their ordinary meaning.' " Hibbett Sporting Goods,Inc. v. Biernbaum, 391 So.2d 1027, 1029 (Ala. 1980) (quoting Flowers v. Flowers, 334 So.2d 856, 857 (Ala. 1976)). An "instrument is unambiguous if only one reasonable meaning clearly emerges." Vainrib v. Downey,565 So.2d 647, 648 (Ala.Civ.App. 1990); see also Flowers, 334 So.2d at 857. "If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court and, when appropriate, may be decided by a summary judgment. However, if the terms within the contract are ambiguous in any respect, the determination of the true meaning of the contract is a question of fact to be resolved by a jury." McDonald *Page 187 v. U.S. Die Casting Development Co., 585 So.2d 853,855 (Ala. 1991) (citations omitted).
After reviewing the terms of the April 18, 1989, purchase/option agreement in a light most favorable to RCDC, the trial court determined that FAFSL was not committed to lend RCDC money to purchase Cedarhurst lots. We agree. We find no ambiguity in the terms of that agreement. The "construction loan" section of the agreement is the only section that could be construed to commit FAFSL to a loan. Item six of this section states that proceeds from a loan made pursuant to this section would be "disbursed upon progress of construction" and paid "directly to suppliers, subs, etc." Only one reasonable meaning emerges from this language: FAFSL offered to lend RCDC money to cover costs incurred in constructing condominiums on Cedarhurst lots. This language cannot be construed to commit FAFSL to lend RCDC funds for the purchase of these lots.
Because the circumstances surrounding the contract are considered only where the terms are ambiguous, we do not consider evidence of the parties' intentions or course of dealing. United States Fidelity Guaranty Corp. v. ElbaWood Products, Inc., 337 So.2d 1305, 1308 (Ala. 1976).
We affirm the defendants' summary judgment.
AFFIRMED.
MADDOX, SHORES, HOUSTON and KENNEDY, JJ., concur.